**WEATHERBY LAKE IMPROVEMENT CO., Respondent,**

v.

**Joseph SHERMAN et al., and Robert D. Crist, Appellants.**

**No. WD 31277.**

Missouri Court of Appeals, Western District.

Dec. 30, 1980.

Motion for Rehearing and/or Transfer Denied Feb. 2, 1981.

Application to Transfer Denied March 9, 1981.

James R. Sandifar, Bunch, O'Sullivan, Sandifar & Hill, Kansas City, for appellants.

R. Michael McGinness, Clevenger, Fickle & McGinness, Platte City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Weatherby Lake Improvement Company filed a declaratory judgment action seeking approval for the levy of an assessment to pay the cost of improvements to the dam and spillway by which Weatherby Lake was formed. The court declared the Company had the right to levy such an assessment and Robert Crist appeals.

Crist contends the court erred in its judgment because (1) the assessment was approved by the board of directors of the Company rather than the membership; (2) there was no power in the Company to levy an assessment; (3) the prior assessments authorized by the circuit court had been only for regular annual assessments and not for major repairs; (4) the assessment was inequitable because it did not fairly reflect the benefits and burdens of the members; and (5) there was no evidence to show an immediate need for the repairs. Affirmed.

Weatherby Lake was created in 1938 by Glen Weatherby and E. C. Thompson who owned all of the land surrounding the man-made lake except about 40 acres at the north end. The owner of that 40-acre tract consented to the creation of the lake. Weatherby and Thompson formed Lakeview Realty and subdivided their land under the name of Lakeview Subdivision. The plat of Lakeview showed Weatherby Lake but the deeds to the lots in Lakeview did not recite any restrictions as to privileges or responsibilities in connection with the Lake, nor was there any homeowner's association or other such organization created at that time.

In August, 1950, Weatherby Lake Improvement Company was incorporated and thereafter filed a suit against Lakeview Realty.[1] As a result of an agreement to settle that suit, Lakeview Realty, in October, 1952, conveyed to the Improvement Company the land lying under the lake, the dam, spillway and certain parkways.

Thereafter the Improvement Company established regulations for the use of the lake pertaining to fishing and boats.

In December, 1953, 208 lot owners in Lakeview entered into a written, voluntary assessment agreement and this agreement was later signed by an additional 125 lot owners. Under that agreement a basic assessment was made on each lot in Lakeview of $25, plus $5 for each lot which abutted the water, and $5 for each lot improved with a house.

In July, 1958, the circuit court of Platte County in *Weatherby Lake Improvement Company v. J. L. Strup, et al.*, found that in addition to those who executed the assessment agreement, 144 property owners had voluntarily paid the annual assessment without signing the same. The court found that by the agreement and by the voluntary action of those who had not signed the agreement the Improvement Company had been constituted the trustee for all of the lot owners in Lakeview. In the *Strup* case the court found that the suit had been properly brought as a class action and found that all owners of lots in Lakeview would be bound by the judgment. In its judgment the court found that the general maintenance and repair of the lake properties commonly owned, including the roads, lake, lake bed, dam, dam site, parkways and other lake facilities, constituted a constant expense which should properly be borne by all the lot owners in Lakeview because all the owners had an easement for the use of the lake and its facilities. To pay such expenses the court found it was fair and equitable that all of the owners contribute the necessary sums to the Improvement

---

1. The Improvement Company was apparently formed by property owners in Lakeview to fill the void left by the omission of any covenants or restrictions in the deeds relating to the lake and its maintenance, repair and use.

Company. The court further found that a controversy existed between the Improvement Company and the lot owners in Lakeview. In declaring the rights of the parties the court declared that all owners in Lakeview have a duty to pay their fair and proportionate share of the costs of the repair and maintenance of Weatherby Lake, its dam, roads, parkway, and other facilities, together with the cost of legal expense and other office and incidental expenses necessary in carrying out the general business and duties of the Company. The court declared that the Company was thereby ordered and given the right to make yearly assessments against all property owners in Lakeview for the payment of the expenses previously itemized. The court further declared that there is and will be in the future the constant need for funds in the maintenance, repair and rehabilitation of the lake, dam, dam site, parkways and other facilities and granted to the Company the right to make an equitable assessment for such maintenance, repair and rehabilitation costs.

The right of the Company to make assessments was reaffirmed by the Circuit Court of Platte County in judgments entered in several suits brought by the Company against all of the owners in Lakeview with the most recent judgment in January, 1975.[2] In that judgment the court authorized the Company to levy an annual assessment of $60 for unimproved lake front lots and improved second tier lots, $70 for improved lake front lots and $50 for unimproved second tier lots. This suit, like all the others, was a class action against all of the owners of lots in Lakeview and the owners of additional land who had been given the right to use the lake by the circuit court.

In July, 1978, the board of directors of the Company adopted a resolution concerning a special assessment to pay for improvements to the dam by raising the height of the dam, flattening the downstream slope

and reinforcing the spillway. The estimate for the total cost of these improvements was $1,950,000. The board voted to apportion the costs in the same manner as the annual assessments were apportioned, that is, with a basic assessment, and improved first tier lots to pay an additional 40% of the basic assessment, first tier unimproved and second tier improved lots to pay an additional 20% of the basic assessment and the remaining lots would pay the basic assessment only. The assessment on unimproved second tier lots would be $1,375; improved second tier lots and unimproved first tier lots $1,650 and improved first tier lots $1,925.

The Company filed this action in declaratory judgment praying that the court approve the special assessment for the improvements to the dam and spillway as adopted by the board of directors.

This suit was likewise brought as a class action, but certain property owners elected to be excluded from the class and thereafter were personally served and made parties individually. Dr. Crist individually filed an answer and participated in the hearing.

Dr. Crist first purchased his property in Lakeview in about 1972. He now lives at the Lake and, although he disputes the cost of making the improvements to the dam and spillway, concedes that such work is needed. The Company produced two engineers who testified to the condition of the dam and spillway. Kenneth Vaughn, one of the engineers, testified that the steepness of the downstream slope of the dam was critical and could not safely be tolerated to continue in that condition. The dam slope was on a ratio of 2 to 1 and Mr. Vaughn stated it should be no more than 3 to 1. Mr. Vaughn was of the opinion that action should be taken as soon as possible to repair and improve the dam and implement new spillway construction which would be necessary in conjunction with the work on the dam. Mr. Vaughn was of the opinion that the dam could not meet current engi-

2. The *Strup* case and all of the other circuit court cases became final but were not appealed.

neering standards and felt there was a possibility of a catastrophic failure of the dam as a result of overtopping because of the steep slope of the dam.

There was also evidence that the engineering firm of Black & Veatch had prepared an inspection report of the dam for the Army Corps of Engineers. This report stated the dam had a high downstream hazard potential because the spillway will not pass 50% of the possible maximum flood; overtopping could result in dam failure; and dam failure significantly increased the hazard of loss of life downstream. The report noted there are approximately 10 families downstream which would be threatened by any failure of the dam. In addition, there is the potential of appreciable property damage.

In his testimony Dr. Crist admitted the dam and spillway needed attention. Dr. Crist objected to what he felt to be the railroading tactics of the Company through the work of its committees and in membership meetings when no one apparently supported his suggestion that other engineers could be contracted for estimates as to the cost of the work on the dam and spillway.

Crist first contends that the prior circuit court judgments mentioned above do not constitute res judicata or collateral estoppel that the Company is authorized to levy assessments for repair, maintenance and rehabilitation of the dam, spillway and lake bed. Crist argues that these prior judgments dealt only with annual maintenance assessments, not assessments of a substantial nature for extensive repair and rehabilitation which the Company herein requests.

■ There are two conceptual distinctions in the doctrine of res judicata. The first is traditional res judicata (claim preclusion) which prohibits the same party from relitigating the same cause of action. *Oates v. Safeco Insurance Company of America*, 583 S.W.2d 713 (Mo. banc 1979). In this action, the same parties are not relitigating the same causes of action which were litigated in the prior suits; therefore, there is no bar by traditional res judicata.

The second distinction in the doctrine of res judicata is collateral estoppel (issue preclusion). The requirements for the application of collateral estoppel are set out in *Oates, supra*, at 719[10, 11]. The only requirement disputed by Crist is that the issue decided in the prior adjudications is not the identical issue presented in the present action. As previously noted, the circuit court in the Strup case found there would be constant need for funds for the maintenance, repair and rehabilitation of the lake, dam, dam site, parkways and other facilities, and the court declared the Company had the right to make an equitable assessment against the property whose owners had the right to use the lake to provide such funds. This declaration was in addition to the declaration that the Company had the power to make yearly assessments to pay for the usual and ordinary operating and maintenance expenses. The Strup case decided the issue involved here. Since the only reason advanced to preclude collateral estoppel is incorrect, Crist is barred from relitigating the right of the Company, subject to the approval of the court, to levy the assessment in question.

Crist further argues that the formula for an annual assessment is not necessarily appropriate for a special assessment for major repairs. Crist points out that the prior circuit court adjudication did not approve the ratio now applied of 1.4 for improved first tier lots; 1.2 for unimproved first tier lots and improved second tier lots; and 1.0 for unimproved second tier lots. Crist is correct in this contention that the prior adjudications did not approve that ratio for future assessments which might be made for repair and rehabilitation. The prior adjudication did finally determine the question that the Company had the right to make an equitable assessment for such costs. In its findings of fact and conclusions of law in this case, the court found the ratio of assessments to be reasonable. It was necessary for the court in this case to pass upon this question and it did so. This finding was supported by substantial evidence and no reason appears to show such conclusion on the part of the court was not correct.

Crist further contends the condition of the dam which requires substantial repair and rehabilitation is a material change of condition since the entry of the circuit court judgments and for that reason should not bar relitigation of the issue. Crist relies on *City of Hardin v. Norborne Land Drainage District*, 232 S.W.2d 921 (Mo.1950). However, in that case the court pointed out at p. 926 that the occurrence of subsequent events must be such as to create a new legal situation or alter the legal rights or relations of the litigants before the bar of res judicata could be breached. Here, although res judicata does not apply, there were no subsequent events which altered the legal rights of the Company and the property owners. The necessity for work on the dam did not alter the legal rights of the parties but simply fits into the declaration previously made by the circuit court.

■ Crist next contends the levy of the special assessment was not authorized by any agreement, indenture or document in the record and it was not within the authority of the board of directors of the Company to make. It is true there is no authorization by any agreement or document filed by the developer. As pointed out above, the necessity for this and the prior declaratory judgment actions relating to the levy of assessments to maintain and repair the facilities of Weatherby Lake exists because of the failure of the developer to make provisions for the payment of these expenses through covenants or a home's association. The power to make an assessment subject to the approval of the court is vested in the Company by the prior adjudications of the Circuit Court of Platte County which are binding upon all of the owners of the property on which the Company was authorized to levy assessments. For that reason it was necessary to bring this declaratory judgment action to determine if the assessment is needed and equitable. The court addressed those issues and found the assessment to be needed to pay for the work on the dam and spillway and found the assessment to be equitable.

■ Crist contends that the assessment was voted by the board of directors of the Company and not by the membership. The Improvement Company filed Articles of Acceptance under the general Not-For-Profit Corporation Act, Chapter 355, RSMo 1978, in 1977. The Company now exists as a not-for-profit corporation with all owners of the land who have been granted the right to use Weatherby Lake as members of the corporation. The members select a board of directors. In *Komanetsky v. Missouri State Medical Association*, 516 S.W.2d 545, 555[9, 10] (Mo.App.1974) the court held that a vote of the entire membership of a not-for-profit corporation is required only as a matter of law for extraordinary matters which include (1) a radical change of fundamental policy or purposes, (2) dissolution, and (3) merger.[3] Obviously the assessment did not involve any of these matters. Crist does not rely on any specific authority to question the right of the board to pass the resolution levying the assessment. Under the holding in *Komanetsky* there were no extraordinary matters involved here which would require a vote of the entire membership. In that situation, the board of directors was authorized to pass the resolution providing for the assessment.

■ Crist contends that it is necessary to imply the power to make assessments from documents other than the prior adjudications, and for that reason there is no clearly discernible formula for determining the amount of the assessment and this constitutes an unreasonable restraint on the alienation of land. What has been said also disposes of this point. There is no unreasonable restraint on alienation in this case because there is no provision allowing assessments in an uncertain amount to be levied at any time by the Company. The assessments are levied by reason of the

[3.] Chapter 355 does not address the problem. That chapter does not require a corporation organized thereunder to have members, but in the event it does, there are certain matters required to be approved by the members with the right to vote. Those matters requiring a vote by the members, if any, follow the general rule stated in *Komanetsky*.

authority granted in the prior adjudications, but each assessment must be approved by the court as to need and its equitable (fair) nature. Thus, any assessment is subject to approval by the court with notice and hearing provided to the property owners prior to the approval. The property here involved is no different from all property which is subject to future assessments lawfully made.

Crist next urges the assessment was unreasonable because the burdens and benefits of the assessments are not equitably distributed. He asserts the burden on lots which have no lake frontage is excessive in comparison to the relative benefit derived by those lots from their lake privileges. Crist, as a part of this argument, states that the biggest share of the special assessment will be borne by lots which do not front on the lake. This, of course, is true from the simple fact that there are more lots which do not front the lake than there are which do. As previously set out the lots fronting on the lake pay 40% more than those unimproved lots which do not. The improved lake front lots pay 20% more than the improved lots which do not front on the lake. There was substantial evidence to support the court's finding that this was an equitable method of distributing the costs of the repairs and rehabilitation. However, as to any application of the assessment to a particular lot which would seem to be unfair it is well to bear in mind the statement in *Commerce Trust Co. v. Blakeley*, 274 Mo. 52, 202 S.W. 402, 404[1–3] (1918):

> It is true exact equality in apportioning the burdens of improvements is beyond human wisdom, and no heed will be given complaints against a rule which approximates justice as nearly as reasonably may be. Exceptional cases of hardship in the natural and ordinary application of a principal of apportionment generally fair and just "must be borne as one of the imperfections of human things."

Crist points to the testimony of one person who owned a lot not fronting on the lake who stated the value of that lot was less than the amount of the assessment on it. From other evidence the court could have found that such witness had underestimated the value of such lot. There was substantial evidence that the assessment ratio employed was fair and just and this finding by the court will not be disturbed.

Crist also contends there was no evidence that the dam repairs constituted an urgent, critical or immediate need which in turn would lead to the immediate need to levy the assessment. This argument seems to spring from the hypothesis that it was incumbent upon the Company to prove some sort of emergency or show that the dam was going to collapse immediately if repairs were not undertaken. The hypothesis is false. As noted, the prior adjudication in the circuit court simply declared that future assessments for the maintenance, repair and rehabilitation of the lake, dam, dam site, parkways and other facilities be based on need and that the assessment be equitable. This is the authority under which the assessment is being made subject to court approval. There was evidence previously recited which showed this need and this constituted substantial evidence from which the court could find a need for such work. While the question of the immediacy of needed work might be relevant in some future case, as bearing on the question of need versus desire, there is no question the evidence shows an immediate need in this case rather than a simple desire for work to be done. The basic authority previously given to the Company is simply that a need exists for work which requires the assessment. The finding by the court that there was a need for the work described is supported by substantial evidence.

The judgment is supported by substantial evidence and is affirmed.

All concur.