## LAKE TISHOMINGO PROPERTY OWNERS ASSOCIATION, Plaintiff-Respondent,

v.

## Carla Helen CRONIN, et al., Defendants,

**John Johnson, Everett V. Johnson, Mary Frances Johnson, Albert George Beyer, Cecelia M. Beyer, Henry E. Klein, Edna Klein, Defendants-Appellants.**

### No. 65516.

Supreme Court of Missouri, En Banc.

Oct. 9, 1984.

As Modified on Denial of Rehearing Nov. 20, 1984.

Albert George Beyer, St. Louis, for defendants-appellants.

Jack C. Stewart, Dennis H. Tesreau, Hillsboro, for plaintiff-respondent.

WELLIVER, Judge.

Lake Tishomingo Property Owners Association, respondent, brought this action seeking to enforce liens on real property owned by appellants resulting from their failure to pay a special assessment levied by respondent for the purpose of maintaining certain common property. It is undisputed that the special assessment was not authorized by the covenant restrictions contained in the original indenture and no provision in the original covenants permitted their subsequent modification. The question before us is whether a consent decree, entered as final judgment in an earlier suit, which amended the original covenants so as to permit special assessments can now be enforced against these property owners. The Circuit Court of Jefferson County ordered enforcement of the liens. We ordered the cause transferred after the Eastern District reversed the trial court. We affirm the judgment of the trial court.[1]

---

1. Appellant's motion for leave to file exhibits, filed after oral argument and ordered taken with the case, is sustained.

## I

Lake Tishomingo Subdivision is a lake community located in Jefferson County consisting of a 120 acre man-made lake surrounded by approximately 930 lots. Its developer, Lake Development Enterprises, Inc. (LDE), platted the property and constructed the lake in the late 1940's. It is clear from the record that the subdivision was designed to be, and remains, a high quality residential community. The present dispute grew out of the need to dredge the lake due to an accumulation of sediments. There is no substantial dispute as to the seriousness of the problem or the necessity of the operation. Water depth had decreased as much as six feet in areas making boating impossible in parts of the lake, fishing was deteriorating, the water was polluted, and the lake suffered from an overabundance of aquatic weeds. Dredging the lake emerged as the only solution after numerous individual attempts to remediate the problem failed. An engineering firm, hired by respondent to study the problem, made specific recommendations and estimated the cost of the dredging operation at approximately $170,000.

The cost estimate far exceeded the revenues that could be generated by the annual assessment prescribed by the subdivision's covenant restrictions, set at fifty-five cents per front foot. A group of residents, including appellant Albert Beyer, unsuccessfully sought to obtain financial assistance from the federal government. When that effort failed, respondent's Board of Directors proposed and adopted a resolution calling for a special election to amend the existing covenants to allow a one-time special assessment of $2.60 per front foot to finance the cost of the dredging.[2] Respondent's directors proposed this course of action in reliance of a provision in a consent decree previously rendered final which authorized:

> [c]hanges in, or additions, to, the said subdivision restrictions ... [upon approval] by a simple majority of the votes cast at an election wherein each lot owner in the subdivision shall be entitled to cast one vote for each ten (10) front feet of lot owned by him, but not less than five (5) nor more than ten (10) votes per platted lot. (Said changes or additions may be for the purpose of assessments, extension of the restrictions, and other matters consistent with the purposes of the subdivision and the trust ...)

The proposition was adopted by a majority of the votes cast. Out of 4,913 possible votes 2,904 were cast; 1,976 voted for the proposition, 928 voted against it. Two hundred forty-six property owners voted in the election; 163 voted for the special assessment, 83 voted against it. Respondent recorded the amendment and levied the assessment.

Respondent filed this suit in 1978 against seventy-six property owners who had failed

---

2. The proposition put before the subdivision's property owners read as follows:

The restrictions applying to Lake Tishomingo Subdivision of Jefferson County, Missouri, said subdivision being as shown in Plat Book 9 at Page 61 of the Jefferson County Land Records, are amended by adding thereto: "The Board of Directors of Lake Tishomingo Property Owners Association are authorized to make a special assessment of Two Dollars and sixty cents ($2.60) per front foot to be levied by the said Lake Tishomingo Property Owners Association upon the owner or owners of each Lot in said subdivision which is subject to the annual maintenance assessment provided however that each lot shall, in making said assessments, be considered as having not less than fifty (50) front feet nor more than one hundred (100) front feet; special assessment to be made on or about August 1, 1976, and one time only, which special assessments shall be in addition to the annual assessment for maintenance and upkeep and said special assessments herein referred to shall be a lien and shall be collected in all manner as though they were the annual assessments for upkeep and maintenance and the funds obtained by said special assessments are to be expended by the Lake Tishomingo Property Owners Association for the purpose of cleaning Lake Tishomingo of silt, weeds and other debris; by mudcat dredge equipment leased as per Engineers Report on the Lake Study.

to pay the special assessment. For reasons that are not altogether clear, respondent proceeded to trial with its claims against only the seven defendants now before us. Presumably the balance of the seventy-six owners paid their assessed shares prior to trial. Appellants include Albert Beyer, an attorney with a long history of involvement in the subdivision's affairs, his wife; his wife's sister, Mary Frances Johnson, her husband and their son, John Johnson; and another married couple, Henry and Edna Klein. Mr. and Mrs. Beyer own nine lots in the subdivision; Mr. and Mrs. Johnson own two lots; John Johnson owns four lots; and Mr. and Mrs. Klein own a single lot.[3] Respondent contends the special assessment liens are valid and enforceable because the property owners in the subdivision approved the assessment in a special election held in accordance with the subdivision restrictions as amended by a now final consent decree. Appellants' defense is that the court entering the consent decree acted in excess of its jurisdiction, rendering the decree void. In order to better understand these claims and counterclaims, we will detail at some length the circumstances surrounding the prior litigation and its eventual settlement.

The developer of Lake Tishomingo Subdivision, Lake Development Enterprises (LDE), included a uniform set of subdivision restrictions in each deed given to purchasers of lots in the subdivision. The restrictions, denominated in the deeds as covenants running with the land, reserved LDE's title to certain property surrounding the lake, including roadways, parkways and the dam. To provide for the maintenance of these areas, the covenants authorized LDE to levy an annual assessment not to exceed fifty-five cents per front foot.[4]

In the mid 1960's, a group of eleven property owners in the subdivision became dissatisfied with the manner in which LDE was using the funds collected from the annual assessment and instituted a class action in the Circuit Court of the City of St. Louis against LDE on behalf of all owners of property in the subdivision. The class representatives alleged that LDE had failed to perform its duties as trustee of the assessment funds by misappropriating the funds for its private use and refusing to maintain the subdivision's dam and roads. They prayed for removal of LDE as trustee and the appointment of a successor trustee, restitution of all misappropriated funds and other relief. Appellant Albert Beyer signed the petition as one of the attorneys for the plaintiff class.

After protracted negotiations, in the midst of which four additional parties intervened as plaintiffs,[5] a final settlement in the form of a consent decree was agreed to by all the parties in March 1971. Apparently both the parties and the court recognized, however, that the Circuit Court of the City of St. Louis was without jurisdiction to render a judgment in the case.[6]

---

3. We were informed of the death of Mr. Klein while this appeal was pending before us.

4. The provision in question reads as follows: As a part of the consideration for the sale of this lot, GRANTOR shall have the right to assess the owner of this lot after August 1, 1949, and each succeeding August 1st thereafter, such sum as GRANTOR shall deem necessary for the upkeep and maintenance of the Dam, Roads, and other improvements, provided, however, that no assessment for any one year shall exceed the sum of fifty-five cents (55¢) per front foot, and further provided that the assessment as levied each year shall be and become a lien without filing of suit or legal procedure to establish such lien on said lot if not paid within thirty days after August 1st of the year in which the assessment is made.

5. The parties intervened after receiving notice of a proposed settlement negotiated by the class representatives and LDE. Three of the intervenors were individual property owners; the fourth claimed to represent a group of 200 property owners.

6. The applicable venue statutes place jurisdiction over the case with the Circuit Court of Jefferson County whether the suit is characterized as seeking appointment of a successor trustee

Consequently, though the court purported to approve the decree, it labeled substantial portions of it "advisory only and ... subject to and dependent upon appropriate Court action to be filed hereafter in Jefferson County, Missouri."

As contemplated, the plaintiffs filed a new class action in the Circuit Court of Jefferson County, naming LDE and the intervening parties as defendants. Plaintiffs repeated the allegation averred in the earlier suit; in addition they alleged that it was necessary to modify the original restrictions because LDE had abandoned them and because they had become impossible to perform and impractical to the community. Respondent, named as a defendant in this suit, was represented by appellant Albert Beyer. The parties submitted to the court a proposed consent decree identical in all material respects to the decree approved in the St. Louis case. Notice of the settlement, indicating that the decree was binding on all lot owners unless objected to within thirty days, was mailed to the owners of property in the subdivision. For this purpose, the attorneys for the plaintiff class relied on records maintained by LDE. Copies of both decrees also were posted in the subdivision's community center. There is nothing to indicate that any objections were filed and the decree was recorded in Jefferson County in early 1972. For his efforts in the case, the court awarded Mr. Beyer $3,000 in attorneys fees.

The decree as finally approved purported to work three significant changes in the original covenants. First, all the rights, powers and obligations of LDE as the original grantor were transferred to the Lake Tishomingo Property Owners Association (LTPOA), respondent herein, as trustee for the benefit of the lot owners in the subdivision; second, LDE's legal title to the subdivision's common areas was ordered conveyed to LTPOA to hold in trust for the benefit of the lot owners; and finally, the

or reformation of a deed. *See* § 456.190;

court approved the method, described earlier, for amending the subdivision restrictions.

None of the parties in the Jefferson County suit sought appellate review of the consent decree and its provisions have otherwise gone unchallenged until respondent filed this suit. Appellants agree that residents of the subdivision have viewed and dealt with respondent as the legitimate successor-in-interest to LDE. Property owners have participated in periodic elections to elect the members of respondent's Board of Directors, public meetings are regularly held, and committees have been established to study specific issues in the community. Respondent has annually levied the regular assessment and property owners, including all of the appellants, have paid it without challenge. Although the record is not clear on the question, it does not appear that an attempt had been made to change or add to the original covenants prior to the attempt giving rise to the present suit.

The trial court ordered enforcement of the liens and awarded interest and attorneys fees. The court found that the earlier St. Louis and Jefferson County cases were valid class actions and that both courts had jurisdiction over the subject matter of the suits. Appellants dispute the latter finding and contend that neither court was empowered to amend the original covenants so as to increase the burden on the covenanted land.

## II

■ Appellants are correct in contending that the courts in both of the prior actions were powerless to amend or reform the original covenants. The records are less than clear that all successors in title were parties to those actions and, in any event, reformation or amendment of the covenants was permissible only upon proof of fraud or mistake, *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309 (Mo.App.1981),

§ 508.030, RSMo 1978.

neither of which was alleged or proven in those proceedings. The Courts' exercise of power in excess of their jurisdiction renders that part of the consent decree which amended the original covenants void and subject to collateral attack in this proceeding. *Rippe v. Sutter*, 292 S.W.2d 86 (Mo. 1956). That which remains of the consent decree is the designation of respondent as successor trustee and holder of title to the common properties of the subdivision and the extension of the existing covenants for a period of twenty-five years,[7] matters accepted by all parties.

■ It is clear to us that all the property owners in the subdivision, except appellants, have recognized at least a contractual obligation to bear their fair share of the cost of preserving the common properties for the benefit of all owners in the subdivision. On the record before us the equitable obligation of these appellants cannot be disputed. While the Court is powerless to reform or amend the original covenants, we cannot close our eyes to the fact that, when compared to the cost of the dredging operation, the assessment permitted by the original covenants was tantamount to no assessment at all. The assessment voluntarily made by the large majority of lot owners appears fair and equitable. The evidence regarding the dredging operation reflects that it was both reasonable and necessary for the preservation of the property value of the more than 900 lots in the subdivision. Under the unique circumstances attending this case, our sense of fairness and justice compels us to enforce the clear equitable obligation of appellants to bear their share of the costs necessary for preserving the common property essential for continuation of the subdivision. *See Weatherby Lake Improvement Co. v. Sherman*, 611 S.W.2d 326 (Mo.App.1980). Thus understood, the voluntary assessment made and honored by the great majority of property

owners was enforceable by the trial court under the court's power to render equity.

Respondent's motion to substitute parties on account of the death of Henry Klein is sustained and a copy of the motion is ordered transmitted to the circuit court for correction of the final judgment.

For these reasons, the judgment of the trial court is affirmed.

HIGGINS, GUNN, BILLINGS and DONNELLY, JJ., concur.

RENDLEN, C.J., concurs in result.

BLACKMAR, J., concurs in result in separate opinion filed.

BLACKMAR, Judge, concurring in result.

I agree that the decision of the trial court should be sustained on the basis of general equitable principles.

I write because the principal opinion unnecessarily and unwisely pronounces the consent decrees "void." This broad language might dissuade a court from making an equitable adjustment in a future situation which we cannot precisely foresee, in the manner of *Weatherby Lake Improvement Company v. Sherman*, 611 S.W.2d 326 (Mo.App.1980), which is cited with apparent approval.

The authorities cited in the principal opinion are not at all appropriate. In *Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309 (Mo.App.1981), Judge Satz carefully distinguished between "failure to state a claim" and "want of jurisdiction over the subject matter" in an opinion holding that the trial court "did possess subject matter jurisdiction." His opinion affirmed the dismissal of the action because "appellants' petitions failed to state a claim upon which relief could be granted." The case before him involved the dismissal of the plaintiff's

---

7. The original indenture authorized the extension of the covenants for a period not exceeding twenty-five years upon agreement of the owners of a majority of the front feet in the subdivision. Clearly a majority have so agreed.

petition. The court properly expressed no opinion as to what the result would have been if there had been a final and unappealed judgment, whether in a class action or otherwise.

*Rippe v. Sutter,* 292 S.W.2d 86 (Mo.1956) bears not the least resemblance to this case. It states only an abstract proposition and is of no help in solving the present problem. The principal opinion demonstrates that people who involve themselves in a venture of the kind described in evidence may sometimes fail to plan and provide for conditions and circumstances which are essential to the success and continuation of the venture. I would avoid sweeping pronouncements about the absence of equitable jurisdiction. The principal opinion refers to "the unique circumstances attending this case." We speak authoritatively only on the unique circumstances of any case which comes before us, leaving it to future courts to determine the application of our holding to other fact situations.

Because of the unwarranted attempt to expand the scope of the opinion by means of the first paragraph in Part II, my concurrence in affirming the judgment must be in the result only.

## SUPPLEMENTAL MEMORANDUM ON MOTIONS FOR REHEARING

BLACKMAR, Judge.

Both parties have filed motions for rehearing. It is unusual for the winning party to do so, but I can understand the confusion because of the Court's stubborn insistence on the dicta contained in the first paragraph of Part II. I am sure that lawyers and judges will likewise be confused by this paragraph, which pronounces a part of the decree void but then proceeds to give it effect. The authority of the case, however, is determined by the result and not by unnecessary pronouncements. The opinion, then, sustains the exercise of equitable jurisdiction.