STEVENS et al. v. ANNEX REALTY COMPANY et al., Appellants.

Division Two, March 31, 1903.

1. **Perpetuities: TEST: ALIENABILITY.** If, under a deed conveying lands to trustees which restricts their use in a particular way and subjects them to certain burdens, the various interests and estates, present and future, vested and contingent, can, by releases or conveyances, be consolidated in a common grantee, and the consolidated estate thus formed, is, of necessity, the absolute fee in possession, there is no such restraint of alienation as makes the estate a perpetuity. It is only when there are no persons in being who could convey an absolute fee in possession, discharged of a future use or estate, that there is a perpetuity.

2. ——— : ——— : ——— : DEED TO TRUSTEES FOR IMPROVEMENTS: LOTS, STREETS AND PARKS. The owners of land, in order to lay it out into streets, blocks, lots and parks, and to improve and dispose of the lots, dedicated the streets and parks to public use, and conveyed the lots to trustees, empowering them to improve the streets and parks and to pay all taxes, public and local, and to collect from any party liable to pay the same any assessment on said lots levied by law or pursuant to the terms of the deed having for their object the improvement of said lots, streets or parks, and made these burdens run with the land, and made them a first lien on the lots in favor of the trustees named or their successors, with power in the trustees to prosecute suits for the collection of any such assessments. *Held*, that this deed did not create a perpetual trust in the parks and streets in favor of the lotowners as beneficiaries, but that at any time the trustees and lotowners can convey the lots to a common grantee, and thereby the lots, streets and parks will be freed from the trust estate, and therefore there is no such restraint of alienation as constitutes the estate created by the deed a perpetuity, and hence the trustees can maintain suit for such assessments.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*John B. Denvir, Jr.,* for appellants; *Carter & Sager* of counsel.

(1) The so-called trust is an unlawful suspension of alienation, and is in violation of the rule against perpetuities. Williams v. Herrick, 32 A. 913; In re Walkerly, 49 Am. St. 97; Cottman v. Grace, 3 L. R. A. 145; Adams v. Perry, 43 N. Y. 487; Barnum v. Barnum, 26 Md. 171; Missionary Society v. Humphreys, 91 Md. 131; Prettyman v. Baker, 91 Md. 538; Andrews v. Lincoln, 50 A. 898; In re Corle, 48 A. 1027; Bigelow v. Cady, 171 Ill. 229; In re Murray's Will, 69 N. Y. S. 491; Walker v. Taylor, 44 N. Y. S. 446; 1 Washburn on Real Property (5 Ed.), p. 115; Perry on Trusts, sec. 737; Haynes v. Sherman, 117 N. Y. 433. (2) This rule is recognized and enforced in Missouri. Gates v. Seibert, 157 Mo. 254; Lockridge v. Mace, 109 Mo. 162;

Chism's Admr. v. Williams, 29 Mo. 288. (3) The trust, being illegal, is void and the covenants to support it are unenforcible. Williams v. Herrick, 32 A. 913; In re Walkerly, 49 Am. St. 97; Cottman v. Grace, 5 L. R. A. 145; Adams v. Perry, 43 N. Y. 487; Turley v. Edwards, 18 Mo. App. 676. (4) There is no contention that a trust estate is created in the building lots in Clifton Place, and that they can never be alienated. On the contrary, we admit that they can be alienated at the will of their owners. Nor is there any contention that the covenant above set forth is in restraint of alienation and in violation of the rule against perpetuities. On the contrary, we admit that the covenant is in itself perfectly legal, and that, if the trust is lawful, it can be enforced. The contention is that as the private parks and streets were conveyed to trustees to be held in trust forever for the benefit of the lotowners, a perpetual trust of which the lotowners are the beneficiaries was created in said parks and streets; that there never will be a time when either the trustees or the beneficiaries or both together can convey the parks and streets freed from the trust estate. In fact, even the beneficial interest in the parks and streets can never be directly alienated or alienated independently of the lot to which it is attached. If one wishes to become a beneficiary in said trust he must fulfill the conditions named in the deed, i. e., become a lotowner. The trust property is as completely taken out of the market as if the earth had opened up and swallowed it or as if it had been transplanted to the moon. Generation after generation of trustees will rule over the destinies of Clifton Heights; assessments will be called century after century, and when finally the days are accomplished that the end of the world should come the trustees will be found at their posts by the angel of death ready to call another assessment. In a word, the trust created here unlawfully suspends the power

Vol 173 mo—33

of alienation of the parks and streets and is in violation of the rule against perpetuities and, hence, a covenant to support it is unenforcible.

*Young & Altheimer* for respondents.

(1)  The covenants contained in the deed from Kennedy and wife to M. B. O'Reilly, defendant's grantor, are covenants running with the land, and bind these defendants.  Whittenton Mfg. Co. v. Staples, 164 Mass. 319; Jones on Easements, sec. 92; Hickey v. Railroad, 62 N. E. 672; Day v. Prentiss, 90 Hun 27; Coudert v. Sayre, 46 N. J. Eq. 386; Coughlin v. Baker, 46 Mo. App. 54; Sharp v. Chetham, 88 Mo. 498; Keating v. Korthage, 88 Mo. 524; Washburn on Easements (4 Ed.), 185; Lodd v. Boston, 21 Am. St. 484; Hall v. Weston, 7 Mo. App. 56; Hopkins v. Smith, 38 N. E. 1122; Cornish v. Weisman, 35 Atl. 408; Leach v. Ranes, 48 N. E. 58; 1 Jones on R. P., pp. 733, 774, 784, and 782; Tulk v. Moxhay, 15 Eng. Rul. Cas. 252; 5 Am. and Eng. Ency., p. 13; Railroad v. Railroad, 41 Minn. 461; Middleton v. Newport, 16 R. I. 329; Fresno Co. v. Rowell, 80 Cal. 114; Howard Mfg. Co. v. Water Lot Co., 53 Ga. 689; Middlefield v. Knitting Co., 160 Mass. 267; Landell v. Hamilton, 175 Pa. St. 327; Tobey v. Moore, 130 Mass. 448; Dorsey v. Railroad, 58 Ills. 65; Railroad v. Kennedy, 82 Ky. 154.   (2)  The proposition here is the enforcement of a valid legal contract, which defendant agreed to perform when it accepted the deed.  Whittenton Mfg. Co. v. Staples, supra; Bishop on Contracts, sec. 22. These covenants are fair, reasonable, just.  They are not opposed to public policy.  On the contrary, they make it possible to have a home in a large city, free from the inroads of the ordinary nuisances.  Oscanyon v. Winchester Arm Co., 103 U. S. 273.  (3)  The covenants contained in the deeds run with the land, and bind all subsequent purchasers, regardless of any recitals contained in the

deeds under which they immediately hold.   Duncan v. Railroad, 4 S. W. (Ky) 228.   (4)   The assessment herein sued on is not a tax within the meaning of the law.   Meriwether v. Garrett, 102 U. S. 513; Anderson's Law Dictionary, p. 1007; Whittenton Mfg. Co. v. Staples, supra.   The rule against perpetuities, or restraint of alienation, has no application to the case at bar.   Gray on Perp., sec. 682; Gray on Alienation, secs. 4-43, and note; Washburn on R. P., 701 to 702. A restrictive covenant or contract, not being a limitation of property, is not obnoxious to the rule against perpetuities.   MacKenzie v. Childers, L. R. 43 Ch. Div. 265.

BURGESS, J.—This is an equitable proceeding, the purpose of which is to enforce against defendant, the owner of a lot, an assessment made upon the lot in pursuance to the covenant of a deed through which it claims title, and to declare the  assessment a  lien upon the lot.

The case was  submitted to the  court upon  an agreed statement of facts which shows that on April 10, 1885, Angus G. Kennedy and Annie E. Kennedy, his wife, and Willis H. Plunkett and his wife, made a conveyance to Fry, Tebbetts, Croy, Doan and  Pye,  as hereinafter stated.   The deed of conveyance recites that whereas the grantors are the owners of certain tracts of land, containing 45.5 acres, and, whereas, in order to improve and dispose of the land, they have determined to lay out certain private streets and two parks, and dedicate said streets and parks to the use of the persons who may purchase and improve the lots in said subdivision, and have caused the remainder to be laid out into fifty-eight building lots; and, whereas, they desire to secure to persons purchasing the lots the enjoyment of the parks and private streets upon the terms and conditions as set out in the deed; now, in consideration of five dollars, they convey the two parks

designated as Clifton Park and Frisco Park and the private streets and avenues designated as Simpson avenue and Bowman avenue to the said Fry, Tebbetts et al., in trust, to improve said avenue and parks, giving them power for that purpose to improve and ornament the parks and to keep the roads and parks in good order and repair, empowering them to pay all the taxes, public or local. The deed provides for the enjoyment of the parks by the owners of the lots under such rules and regulations as the legal owners of a majority in number of the lots may from time to time establish. It also designates the parties of the second part, to-wit, Fry, Tebbetts et al., as trustees, and provides for the filling of vacancies in case of the death or resignation of any of the trustees, and fixes the terms for which the first trustees shall hold office; provides for the election of a president and other officers, and for the holding of an annual meeting on the first Monday in March of each year. It also provides that the trustees, or their successors, shall have power to collect and recover from any party liable to pay the same, all such annual charges and assessments as are or shall be charged, levied or assessed on said lots, or any part thereof, by law or pursuant to the terms of the deed, or any part, and to enforce the conditions, covenants, regulations and restrictions created by the deed, they having for their object the protection or improvement of said lots, roadways and parks.

The deed contains further provisions substantially as follows:

That the said parties of the first part, for themselves, their heirs, executors and administrators, and also for and on behalf of all persons who may hereafter derive title or otherwise hold through them, any of the building lots aforesaid, or any part of the said lots, agree to and with the said parties of the second part, and their survivor or survivors and their successor or successors in said trust, as follows:

First, that each of said building lots in said sub-division, and also the person or persons from time to time owning the same, shall forever hereafter stand and remain bound and chargeable to said board of trustees for the time being, and to such treasurer, for the payment of all levies, charges or assessments as shall be made by said board of trustees for the purpose of paying taxes, general, special or local, so incurred and for the improvement of the streets and parks, and they further agree that all said assessments shall be a first lien on said respective lots and each of them and every part thereof, and in default of payment at the time specified, said board of trustees may institute suits and prosecute such proceedings in law or equity as may be necessary to enforce said lien and the payment thereof, with interest from the time it became due, with $20 in each case as liquidated damages.

It further sets forth substantially that those covenants, conditions and restrictions shall attach to and run with each and every building lot and all titles and estates in the same, and shall be binding on each and every lot and each and every owner of the same forever. And it covenants that neither of the parties hereto, nor their heirs or assigns, or any future owner, shall or will convey or demise any or either of said lots, or any part thereof, except and being subject to the covenants, conditions and restrictions contained in the deed; and whether or not it is so expressed in the deed or other conveyance of said premises, the same shall be absolutely subject to said covenants, conditions and restrictions which shall run with and be appurtenant to said land and every part thereof. There is a further provision that the covenants, restrictions and so forth shall not be enforced personally against any of the parties, their heirs or assigns unless he or they, while owners, shall have violated or failed to perform such covenants, etc. The deed provides that the trustees shall make the assessments for the pur-

pose of paying the taxes upon the land held by them in trust, and for the improvement of same, and provides for the manner of making the assessments. This deed was duly recorded on April 28, 1885.

On April 11, 1885, Angus G. Kennedy and wife conveyed the lots in controversy to M. B. O'Reilly, which deed was duly recorded. This deed contains a stipulation that the lots are conveyed by the parties of the first part and accepted by the parties of the second part, and his heirs and assigns, subject to the conditions, stipulations and agreements contained in the deed of Kennedy and Plunkett to Fry, Tebbetts et al., being the deed first above recited. And the deed further covenants that the lots conveyed are to be held, improved and disposed of in conformity with and subject to all the provisions of said Kennedy and Plunkett's deed as if said conditions were incorporated in and made a part of the deed.

It is admitted that at different times and dates, subsequent to the conveyance by Kennedy and wife and Plunkett and wife to the trustees, said Kennedy and Plunkett did convey to sundry parties the several lots, to-wit, lots numbered 1 to 58, both inclusive, and that in every conveyance of said lots, or parcel thereof, the deed from Kennedy and Plunkett to Fry et al., as trustees, was referred to, and said conveyance bound the respective purchasers to all the restrictions, conditions and agreements contained in the deed to the trustees aforesaid.

On February 10, 1897, M. B. O'Reilly and wife conveyed the property described in the petition by deed, which omitted reference to the deed of Kennedy and Plunkett to the trustee, to the defendant, the Annex Realty Company, which is now the owner thereof.

It is admitted that on April 30, 1896, the plaintiffs, as the board of trustees, levied an assessment of five dollars on parts of lot 38, and three dollars on part of lot 37, being the property in controversy, under and

by virtue of the power and authority set forth in the deed from Plunkett and Kennedy to Fry et al., as trustees; and that on July 30, 1897, plaintiff notified the defendant of said assessment and demanded payment thereof.

It is not contended by defendant that a trust estate is created in the building lots in Clifton Place, and that they can never be alienated, but it is admitted that they can be alienated at the will of their respective owners. Nor is there any contention that the covenant of the grantors in the deed executed by them on April 10, 1885, to Fry, Tebbetts et al., for themselves, their heirs, executors and administrators, and also for and on behalf of all persons who might thereafter derive title to or otherwise hold through them any of the lots aforesaid, is in restraint of alienation and in violation of the rule against perpetuities. On the contrary, for the purpose of the present argument, defendant admits that the covenant is in itself perfectly legal, and that, if the trust is lawful, it can be enforced. But the argument is that as the private parks and streets were conveyed to trustees to be held in trust forever for the benefit of the lotowners, a perpetual trust of which the lotowners are the beneficiaries, was created in said parks and streets, and that there never will be a time when either the trustees or the beneficiaries or both together can convey the parks and streets freed from the trust estate.

The law has always been that a vendor of land may restrict its use in a particular way, provided such restrictions are not against public policy and that a covenant of this character runs with the land when either the liability to perform it or the right to enforce it passes to the assignee or vendee of the land if he has notice of the covenant. [Tulk v. Moxhay, 15 Eng. Ruling Cases 254; Courdert v. Sayre, 46 N. J. Eq. 386; The Howard, etc., Company v. The Water Lot Company, 53 Ga. 689; Byers v. Trust Company, 175 Pa.

St. 327.]    That the covenants contained in the deed from Kennedy and Plunkett to Fry et al., as trustees, passed with the land, and that all of said covenants and agreements passed to M. B. O'Reilly, defendant's grantor, by virtue of the deed to him by Kennedy and wife dated April 10, 1885, to one of those lots, is too clear for argument.    As was said in an opinion filed by the learned circuit judge who tried this case:

"In the case at bar, the deed itself expressly provides that the covenants, conditions and restrictions shall run with the land and be binding upon the owners thereof and upon the land itself forever.

"The owners of the lots, Plunkett and Kennedy, being the original owners of the fifty-eight lots, conveyed the streets and parks to the parties of the second part as trustees, and as owners of all the lots, covenanted for themselves and all subsequent purchasers thereof that they will pay all assessments levied, and that the land shall be subject thereto, and also that the deeds made of each piece shall contain this covenant. The fact that the assessments are to be made by trustees does not in any manner affect the nature of the covenant.    It is precisely the same as if Plunkett and Kennedy had, as owners, covenanted with the trustees that for the purpose of improving the parks and private roadways of the subdivision, they and all subsequent owners would pay annually an assessment of ten cents per front foot upon each of the lots in the subdivision to be paid to said trustees by such owners of lots, and such charge to be a lien upon the lots and to run with the land.

"Indeed, it is not essential to the enforcement of restrictions and servitudes of the character here in controversy that they should run with the land.    It is sufficient that they be reasonable and not against public policy, and that the parties against whom they are sought to be enforced have notice, actual or constructive, of the condition or restrictions.    A purchaser

with notice of restrictions, servitudes or stipulations is bound to observe them although they'do not run with the land at law. [Tulk v. Moxhay, 15 Eng. Ruling Cases, 254.]

''In this case, all the conditions, restrictions and stipulations contained in the original deed are contained in the deed of defendant's grantor, and the deed of defendant's grantor was duly recorded. Constructive notice to an assignee is sufficient to make the covenant binding upon him. Subsequent purchasers claiming through a deed which sets out the conditions, and has been recorded, are chargeable with notice of them, and occupy the same position as the grantee of that deed did. [1 Jones Real Property, par. 782.]''

From what has been said it must necessarily follow that the action of the board of Clifton Heights in levying an assessment of five dollars on part of lot thirty-eight, and three dollars on a part of lot thirty-seven of which defendant was at that time the owner, under and by virtue of their powers and authority contained in said deed from Kennedy and Plunkett to Fry, Tebbetts and ·others, was a legal and valid assessment, and the judgment rendered in pursuance thereof, declaring the same to be a first lien upon the property owned by defendant, Annex Realty Company, is a legal and valid judgment, and should be affirmed unless the trust created unlawfully suspends the power of alienation of the parks and streets, and is in violation of the rule against perpetuities and, hence, a covenant to support it unenforcible.

While there are many definitions of a perpetuity, differing as a general thing only in the manner of expressing it, one of the most satisfactory is that given by Sanders on Uses and Trusts, side page 203, as follows: ''A perpetuity may, with greater propriety, be defined to be a future limitation, restraining the owner of the estate from alienating the fee simple of the property, discharged of such future use or estate, before

the event is determined or the period arrived when such future use or estate is to arise. If that event or period be within the bounds prescribed by law, it is not a perpetuity.''

"In order to understand this definition complete, the words 'such event or period being more remote than allowed by law,' should be added." [Note 8, p. 203, supra, Lewis on Perpetuity, side page 164.]

That the beneficial interest in the streets and parks can never be directly alienated, or alienated inde-' pendently of the lots, is, we think, perfectly clear, but it is equally clear that by the conveyances of one of the lots, the beneficial interest in the streets and parks, passes by a conveyance of any of said lots as incident thereto.

As sustaining the contention of the defendant, among the cases relied upon is Williams v. Herrick, 19 R. I. 197, wherein "a testator gave all his property subject to a life estate to five trustees in trust to erect a brick block to be forever known as the 'A. G. & A. W. Olney Block' the remainder to be held by them and managed in such a manner as they might deem for the best interest thereof, the whole to be known as the 'A. W. Olney Trust Estate.' He directed the rents and income to be divided among his heirs in the same proportions as they would inherit his intestate estate, whenever the accumulations should reach such proportions that the trustees should deem dividends advisable, and provided further that vacancies in the board of trustees should be filled by the probate court having jurisdiction of the will 'ever thereafter.' There was no provision in the will for a vesting of the estate or any part thereof in anybody at any time except by way of the dividends to his heirs." And it was correctly held that the trust was a perpetuity.

To the same effect substantially are the following authorities: Adams v. Perry, 43 N. Y. 487; In re Walkerly, 49 Am. St. Rep. 97; Chaplin on Suspension

of Alienation, secs. 2-64; Cottman v. Grace, 112 N. Y. 299.

But that line of authorities differ from the case at bar in that there is no restriction here upon the alienation of the lots, and by releases or conveyances to a common grantee by the owners of the lots, these interests can at any time be consolidated in one, the consolidation thus formed being of necessity an absolute fee in possession.

In Chaplin on Suspension of the Powers of Alienation, section 64, it is said: "The test of alienability, in any given case, lies in the question whether there are persons in being who, if they wish, can convey an absolute fee in possession. The absolute fee need not be already vested in order to obviate suspension of the power. Wherever there is in being a representative for each estate, interest, right and possibility, present and future, vested and contingent, each capable of alienating—if he wishes—the estate or interest represented by him, there can be no suspension. For the various estates and interests constitute amongst them the makings of an absolute fee; and if, by releases, or conveyances to a common grantee, these can be consolidated in one, the consolidated estate thus formed is, of necessity, an absolute fee in possession. In other words, it is sufficient if there are persons in being who, by combining the several estates, rights, interests and possibilities that they represent or are authorized to speak for, can, if they all wish to, patch together an absolute fee. It is not necessary that all the outstanding possibilities of future defeasance should be capable of conveyance or assignment. It is enough that they may be released, or in any way extinguished or got out of the way, so that the fee may be cleared of all features that deprive it of its absolute character, and may be delivered, absolute and indefeasible, to a grantee or releasee."

There is no suspension of the power of alienation of the lots. There are persons in being who can by their concurrence convey an absolute fee to the lots, parks, streets and alleys. The question is not as to the probability or improbability of the owners of the lots doing so, but rather as to their power to do so by their concurrent action if so inclined, with respect to which we think there can be no question. With this aspect of the case there is no future limitation, restraining the owners of the lots from aliening the fee simple of the property discharged of the covenants in the deed *inter partes* from Kennedy and Plunkett to Fry, Tebbetts and others, hence, the covenants in that deed are not obnoxious to the rule against perpetuities.

The judgment should be affirmed, and it is so ordered.

All of this Division concur.