LAKE WAUWANOKA, INC., A Missouri Corporation, Plaintiff-Appellant,

v.

Dr. Ronald E. SPAIN, et al., Defendants,

and

James M. Hay, et al., and William Scheifler, et al., Intervenors-Defendants-Respondents.

LAKE WAUWANOKA, INC., A Missouri Corporation, Plaintiff,

and

David McMullan, Intervenor-Plaintiff-Appellant

v.

James M. HAY, et al., and William Scheifler, et al, Intervenors-Defendants-Respondents.

Nos. 41986, 41987.

Missouri Court of Appeals, Eastern District, Division Four.

July 28, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 21, 1981.

Application to Transfer Denied Nov. 10, 1981.

Thurman, Nixon, Smith, Howald, Weber & Bowles by John W. Howald, Jeremiah Nixon, Hillsboro, for Lake Wauwanoka, Inc.

William Stix, Clayton, for intervenors-defendants-respondents Harriman, et al.

J. Kehlor Carr, House Springs, for intervenors-defendants-respondents Scheifler, et al.

James L. McHugh, St. Louis, for David A. McMullan, intervenor-plaintiff-appellant.

SATZ, Presiding Judge.

This case is a consolidation of two appeals. One appeal was perfected by appellant Lake Wauwanoka, Inc. (Wauwanoka) which, as plaintiff below, filed a class action against certain named defendants as representatives of the class of lake development lot owners and requested the court to change an indenture covenant defining the assessment which may be levied annually against each lot owner. The other appeal was perfected by appellant McMullan, who, as a lot owner, was permitted to intervene below and filed an intervening petition seeking a change in the assessment covenant differing from the change sought by appellant Wauwanoka.

Respondents are two additional and separate groups of lot owners, not named in appellant Wauwanoka's petition, who were permitted to intervene as parties defendant to appellant Wauwanoka's petition. Each of these latter groups of intervenors filed an answer and counterclaim to appellant Wauwanoka's petition.[1]

On motion, the trial court dismissed both appellant Wauwanoka's petition and appellant McMullan's intervening petition, severed the counterclaims for separate hearings and designated its dismissal as a final order for purpose of appeal. Each appellant then perfected an appeal. The two appeals were consolidated, and, in this consolidated appeal, we affirm the judgment of the trial court.

Appellant Wauwanoka is the successor to the original grantor/developer of a residential lake development in Jefferson County. The original indenture was recorded in 1943. The covenant in issue here stems from an original covenant which allows the grantor to assess the owner of each lot an amount "deemed necessary for the upkeep of the dam, roads, and other improvements, provided, however, that no assessment for any one year shall exceed the sum of fifty-five cents (.55) per front foot. . . ." This assessment could be extended for a 25 year period by a vote of the "owners of a majority of the front foot" (sic) in the subdivision but "the restrictions on any lot [could] be removed only by written consent . . ., of [the] grantor and the owners of all other lots in the same block."

In 1967, appellant Wauwanoka brought a class action requesting the court to amend the method of removing restrictions so that any restriction could be changed, extended, amended or abrogated by "written consent of the record owners of a majority of the lots in the subdivision." The court did not

---

1. Appellant McMullan was permitted to intervene as a "party." He filed pleadings designated separately as an "answer" to appellant Wauwanoka's petition, an answer to the "responses" of the intervening defendants and also filed his "intervening petition" which requested a change in the assessment restriction. The intervention process utilized by the parties is not in question here.

grant the specific relief requested but did grant an increase in the maintenance assessment from 55 cents per front foot to 75 cents per front foot.[2] Subsequently, in 1967, "owners of more than a majority of the front feet" in the subdivision recorded a written instrument extending for 25 years the original assessment covenant "as amended by" the "judgment and decree of the circuit court of Jefferson County, Missouri. . . ."

In the present action, appellant Wauwanoka alleges the funds collected pursuant to the 1967 "amended covenant" are inadequate to meet present maintenance needs and seeks relief comparable to the relief sought in 1967. More specifically, appellant Wauwanoka requests the court to order the covenant amended so that the restrictions "may be changed, extended, or abrogated" by the majority of the lot owners.[3] Appellant McMullan, in his intervening petition, requests the court to amend the assessment covenant to permit the grantor to make the annual assessments according to a different formula.[4]

As noted, the trial court dismissed each petition for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted.[5] Although the relief requested by appellant Wauwanoka in the court below differed from the relief requested by appellant McMullan, appellants on appeal maintain the same position on the issues of jurisdiction and the existence of a cause of action. Thus, we address each argument made as if the argument were jointly made.

2. The court ordered the original covenant amended to allow the grantor "to assess the lot owners ... such sum as [grantor] shall deem necessary for the upkeep and maintenance of the dam, roads, and improvements, provided that no assessment for any one year shall exceed the sum of 75 cents per front foot, and provided further that an additional amount not to exceed 25 cents per front foot per year may be assessed on all lots over a period designated by the Grantor with the written consent of the record owners of the majority of the lots and a majority of lot owners in said subdivision. . . ."

3. The pertinent part of the appellant Wauwanoka's requested change in the covenant reads:
"The restrictions herein may be changed, extended, amended or abrogated by the written consent of the record owners of the majority of the lots in the subdivision, in conjunction with the consent of the corporation grantor or successor grantor, which consent shall be duly executed and acknowledged and said amendments to be filed for record thereafter in the Recorder's Office of Jefferson County, Missouri."
. . . .
". . . each lot [shall] be assessed a minimum assessment each year; and ... the rate of assessment per foot and minimum must have ... been approved in writing in a document executed by the record owners of a majority of the lots in said subdivision; . . ."

4. Appellant McMullan's requested change in the covenant reads:
"Lake Wauwanoka, Inc. has the right to assess the low-owners (sic) of lots in said subdivision on or before October 1, 1979 and each succeeding October 1st thereafter, such sum as Lake Wauwanoka, Inc. shall deem necessary for the upkeep and maintenance of the dam, roads and other improvements; provided, however, that the first assessment levied after the date of this judgment, order and decree, shall not exceed the sum of _____ dollars per front foot; and further provided that no more than every three years thereafter Lake Wauwanoka, Inc. shall be authorized to increase the rate of assessment, if necessary, not exceeding, however, the percentage of increase in the cost of living index in this area as published by the United States government; and that such percentage of increase of the cost of living be calculated from the date of the last rate of assessment levied by Lake Wauwanoka, Inc.; and provided further that the assessment as levied each year shall be and become a lien without the filing of a suit or legal procedure to establish such lien on said lots if not paid within thirty days after October 1st of the year in which the assessment is made."

5. The Court stated: "the judicial function is a limited one and is not empowered to answer all of the 'political' and social problems that beset a community. We have no more business amending restrictive covenants and setting assessments than we do passing legislation and levying taxes. Separation of power and limitation of authority are vital to the maintenance of our system. Government by judiciary would be an unwarranted and violent intrusion into the local political affairs of this lake community and the private property interests involved. The resourceful people of Lake Wauwanoka must find their answer in private contract, voluntary association and the political process. This Court must not trespass this domain."

Appellants concede their requests for relief are novel and attempt to justify their requests by drawing analogies to the present law. Appellants' analogies are not persuasive.

Appellants focus their arguments on the trial court's jurisdiction to grant the relief requested. The arguments rest on the abstract principle that the remedies of equity are plastic and may be molded to meet the needs of justice. To flesh out this principle, appellants characterize the covenant in issue as a restrictive covenant and attempt to liken the present case to those restrictive covenant cases in which the court, in equity, recognizes changed conditions and, because of the changed conditions, either refuses to enforce the covenant or may, theoretically, declare the covenant void. *See, e. g., Gibbs v. Cass*, 431 S.W.2d 662 (Mo.App.1968) (refusal to enforce covenant); *Pickel v. McCawley*, 329 Mo. 166, 44 S.W.2d 857 (1931) (covenant declared no longer binding or enforceable). Appellants argue that if they prove a change in conditions, they have established the necessary ground for the exercise of the court's power to furnish a remedy and the court should furnish an equitable remedy even though the remedy may be novel. We disagree.

Although appellants refer to the covenant in issue here as a restrictive covenant, it is more accurately described as an affirmative covenant or equitable servitude—one evidencing a promise to perform an affirmative act: pay the assessment. A restrictive covenant as its name implies operates only as a restriction. It is a promise or an imposed duty to refrain from acting in a defined manner: not to build designat-

ed structures or not to conduct a specified business on the land. However, both are covenants, i. e., promises, and, as such, create rights and duties relating to the land.[6] In particular here, the covenant in issue is similar to a restrictive covenant in imposing a burden related to the use of the land. This similarity notwithstanding, the principles appellants extract from the restrictive covenant cases are of no help to them.

The basic principles of the restrictive covenant cases are straight forward. In determining whether to enforce a restrictive covenant or declare it void, our courts focus on the covenant's continued value and do not balance the relative economic hardships of the dominant and servient estates. *Rombauer v. Compton Heights Christian Church*, 328 Mo. 1, 40 S.W.2d 545 (1931); *Hall v. Wester*, 7 Mo.App. 56 (1879). Thus, the court will enforce a restrictive covenant if it remains of substantial value to the dominant estate, even though changed conditions have caused a hardship to the servient estate. *E. g., Rombauer v. Compton Heights Christian Church, supra* at 554; *See Barnes v. Anchor Temple Assoc.*, 369 S.W.2d 893 (Mo.App.1963).

Appellants would turn this reasoning on its head. Rather than making the viability of the covenant in issue a function of its continued value without balancing economic hardships, appellants would have the viability of the covenant depend upon the balancing of economic hardships without focusing on the covenant's continued value. Appellants' rationale contradicts our Supreme Court's premise that "... the law will not permit a man to repudiate his solemn re-

---

**6.** A distinction is made between real and personal covenants. Real covenants are those which "touch or concern" or benefit the land and are said to "run with the land." Personal covenants are "personal" promises made by grantor and grantee generally concerning the use of the land. The personal covenants do not "run with the land" but still are binding on successors who purchase with actual or constructive notice of the covenant. *Scurlock, Missouri Law of Land Agreements*, 23 U.K.C. L.R. 3 (1954). Understandably, the parties here do not question the binding effect of the original covenant. If it is a real covenant, it "runs

with the land" and thus is enforceable against the parties. *Cf. Hall v. American Oil Co.*, 504 S.W.2d 313, 317 (Mo.App.1973). *See Stevens v. Annex Realty Co.*, 173 Mo. 511, 73 S.W. 505, 507 (1903). If the covenant is personal, it binds the parties because of the notice effected by the recording of the indenture in 1943. *Cf. Hall v. American Oil Co., supra* at 317. For a detailed discussion of equitable servitudes and real and personal covenants *see Scurlock, supra; Reno*, The Enforcement of Equitable Servitudes in Land, 41 Va.L.Rev. 675 (1955); Annot. 23 A.L. R.2d 520–531 (1952).

strictive covenants, fairly entered into, merely because changed conditions render it more inconvenient for him to perform than for his adversary to suffer a breach. If the performance of contracts depended upon the convenience of the parties, there would be little need of having them." *Rombauer v. Compton Heights Christian Church, supra* at 545.

Admittedly, when a radical change takes place which defeats the purpose of a restrictive covenant and the covenant is no longer beneficial to the covenantee, the court, in equity, will not enforce it. *See, e. g., Gibbs v. Cass, supra* at 671. The court remains passive and refuses to exercise its jurisdiction. However, this refusal is "not [based] on the theory that the contract, as such, fails to cover the situation and does not apply to it, for, if that were true, it would be unenforceable even at law; but it is because the changed conditions forbid equitable intervention." *Rombauer v. Compton Heights Christian Church, supra* at 553. Thus, in these circumstances equitable relief is not denied because the obligation has ceased to exist but because equitable relief is not the appropriate remedy. The court's refusal to act does not change the legal relation between the parties; rather the court's inaction leaves the legal relation unaffected allowing the covenantee to pursue his remedy at law.[7] *Id.* at 553. These cases offer no comfort to appellants. Appellants seek to change the legal relation created by the covenant not leave it unaffected.

Additionally, there are those restrictive covenant cases in which the moving party requests the court to declare the covenant void rather than requesting its enforcement and, thus, present the court with a converse procedural request. Apparently, in these cases, radically changed conditions may warrant the court to declare the covenant void and no longer enforceable. *Pickel v. McCawley, supra* at 861; *cf. Eilers v. Alewel,* 393 S.W.2d 584 (Mo. 1965) (in denying

plaintiff's request to have the covenant declared void, the court implicitly recognized the procedural propriety of plaintiff's request). Obviously, declaring the covenant void does alter the legal relation of the parties for the covenant is extinguished both in equity and law.

However, these cases also offer appellants no comfort. Appellants do not seek the extinction of the legal relation created by the covenant; rather they seek to maintain the qualitative relationship and increase the associated quantitative burden. Were we to follow the explicit dictates of these latter cases and extinguish the legal relation between the present parties, we would place appellants in an economic position infinitely more precarious than the economic position described in their respective petitions. Thus, our restrictive covenant cases furnish no rationale to support appellants' novel request.

■ Appellants also argue the covenant in issue should be construed in light of general language contained in the original indenture which states the purpose of the indenture is to maintain the subdivision as a high grade rural residential area. Of course, it is appellants' position that strict enforcement of the covenant can no longer serve this purpose and, thus, appellants contend, the covenant should be changed to fulfill this purpose. We cannot agree.

The language of the covenant is clear and unambiguous. This language leaves no doubt about the correlative rights and duties on the original grantor and grantees and their successors. Thus, the covenant is not open to judicial construction. *E. g., Eilers v. Alewel, supra* at 588; *Andrews v. Metropolitan Bldg., Co.,* 349 Mo. 927, 163 S.W.2d 1024, 1028 (1942). Furthermore, the general recital referred to by appellants apparently is part of the precatory language appearing in the preamble of the

---

**7.** Apparently, the majority of jurisdictions still hold that a change of condition affects the relief only and does not extinguish the restriction. 2 American Law of Property, § 9.39 (1953); Restatement, Property (1944); § 560, Comment c; § 561, Comment d; § 562, Comment c; § 563, Comment b; § 564, Comment d.

**314**

indenture.[8] Recitals of this kind are not, strictly speaking, part of the "agreement," and, "while of value in determining intent," they cannot be used to broaden or change unambiguous and explicit restrictions. *Vinyard v. St. Louis City*, 399 S.W.2d 99, 106 (Mo. banc 1966); *Skinner v. Henderson*, 556 S.W.2d 730, 734 (Mo.App.1977).

In addition, appellants rely on the *cy pres* doctrine which they say may be used to reform the covenant to meet their stated purpose. Their reliance is misplaced. Admittedly, the court in equity will reform a charitable trust to carry out the general charitable intention of the settlor if changed conditions make it impossible or impractical to carry out the particular charitable purposes specified by the settlor. *G. Bogert*, Trusts and Trustees, § 431 (1977). However, the courts developed and use the *cy pres* doctrine because the original settlor no longer can control the trust and thus cannot change the trust to meet changing conditions. Here, any change in the covenant necessary to meet changing conditions may be made by agreement of all parties. Thus, there is no need for application of this doctrine.

What appellants really seek is a reformation of the covenant. Covenants in a deed are essentially promises and, as such, are only reformed upon proof of fraud or mistake. *See Strothcamp v. Sandy Fork Ranch, Inc.*, 440 S.W.2d 193, 195 (Mo.App. 1969). Appellants do not assert mistake or fraud. Furthermore, as noted, the language of the covenant is clear and unambiguous. It leaves no doubt about the correlative rights and duties of the covenantor and covenantee. Without fraud or mistake, this explicit and clear language limits the court's authority. The court may not rewrite the agreement. *See e. g., Grantham v. Rockhurst University*, 563 S.W.2d 147, 150 (Mo.App.1978).

The present petitions do not reveal a set of facts which would entitle appellants to the relief they seek, and, based upon the present record, the petitions cannot be amended to justify that relief. Reaching this same conclusion, the trial court dismissed the petitions for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Either "lack of jurisdiction" or "failure to state a claim" justifies the court's action.

"Jurisdiction" is often used ambiguously. In its stricter sense, it is used only to mean judicial authority over the subject matter and parties. *E. g., Furstenfeld v. Nixon*, 133 S.W. 340, 342 (Mo. 1910). In its broader sense, it also includes the privilege and power to grant specific relief in cases within such authority. *See Healer v. Kansas City Public Service Co.*, 251 S.W.2d 66, 70 (Mo. 1952); *Ringeisen v. Insulation Services, Inc.*, 539 S.W.2d 621, 626 (Mo.App. 1976).

Subject matter jurisdiction is the court's authority to decide a defined class of cases. *See Corning Truck and Radiator Service v. J.W.M., Inc.*, 542 S.W.2d 520, 527 (Mo.App.1976). Appellants' petitions raise the issue of equitable reformation of an instrument. As a court of general jurisdiction, Mo.Const. Art. 5, § 14, and one vested with exclusive equity jurisdiction, the trial court did possess subject matter jurisdiction over appellants' cause. § 478.070 RSMo (Supp. 1981); *First Nat'l. Bank of Kansas City v. Mercantile Bank & Trust Co.*, 376 S.W.2d 164, 168 (Mo. banc 1964); *See Western Casualty & Surety Co. v. First State Bank*, 390 S.W.2d 913, 921 (Mo.App.1965). However, appellants request relief which the trial court has no "power or privilege" to grant and to that extent, the trial court lacks jurisdiction.[9]

---

8. The indenture is not part of this record. The language is referred to in appellant Wauwanoka's brief and reads:

   "It being the intention of the Grantor and of the purchasers of lots to maintain said property as a high grade subdivision for rural residents and with the added attraction of water sports and general amusement."

9. Appellants argue the trial court's jurisdiction cannot be questioned in the present case because the 1967 judgment is res judicata on that issue. We disagree. In the 1967 case, subject matter jurisdiction was not raised nor specifi-

Viewed otherwise, appellants' petitions failed to state a claim upon which relief could be granted. The covenant in issue could be reformed only if it were secured by fraud or mistake. *Strothcamp v. Sandy Fork Ranch, Inc., supra* at 195. The trial court had jurisdiction to grant this relief if the essential elements of fraud or mistake were pleaded. Appellants failed to plead and cannot rightfully plead these essential elements. Therefore, appellants failed to plead a claim for relief upon which relief could be granted.

Accordingly, the trial court's dismissal of appellants' petitions was correct, and we affirm the judgment.

SNYDER and SIMON, JJ., concur.

---

cally ruled on. With reference to jurisdiction, the court merely stated "the real estate involved in this action is located in the County of Jefferson ... and this Court has jurisdiction thereof." This statement cannot be construed sensibly to be a finding on the jurisdictional question raised here.

Appellants counter that this issue could have been raised in the 1967 case, and therefore, it is barred from consideration in the present case. However, a judgment is res judicata to all issues raised and to all issues that could have been raised if, but only if, the same cause of action is in issue. *Stickle v. Link*, 511 S.W.2d 848, 855 (Mo. 1964). Appellants cannot contend their present cause of action is the same as the 1967 cause of action, for if they made this contention, they would be bound not only by the asserted adjudication of jurisdiction but also by the 1967 assessment. Appellants cannot pick and choose the issues by which they wish to be bound. Either the present cause of action is new and the specific issue of subject matter jurisdiction is before us, or the present cause of action is not new and appellants are bound by all findings in the 1967 case, including the assessment. Either way, appellants cannot prevail.