Carl W. WEBB, Barbara A. Webb, Dennis Dark, Kaia Dark, Beverly Wrobel, David Wrobel, Russell Hill, Mildred Hill, Appellants,

v.

Georgia MULLIKIN, et al., Respondents.

No. ED 83735.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 29, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 10, 2004.

Application for Transfer Denied Sept. 28, 2004.

Kenneth J. Heinz, St. Louis, MO, for appellant.

Eric Todd & John Phillips, St. Louis, MO, for respondent.

WILLIAM H. CRANDALL, JR., Judge.

Plaintiffs, eight property owners in a St. Louis County subdivision, brought an action seeking to enjoin defendants, the three trustees of the subdivision, from recording an amended restrictive agreement. Plaintiffs also sought a determination that the amended restrictive agreement was null and void. The trial court granted summary judgment for defendants and plaintiffs appeal. We reverse and remand.

River Bend Estates subdivision (Estates) is located in St. Louis County. The Estates's original "RESTRICTIVE AGREEMENT" was recorded in 1960. This agreement set forth certain "PROTECTIVE COVENANTS" including a provision that the restrictions could be amended all or in part at any time by a majority of the lot owners. The agreement provided for restrictions regarding land use, building types and building methods. The agreement also provided for an assessment not to exceed thirty-five dollars per lot per year.

In 1990, the original agreement was amended. Paragraphs 12, 13 and 14 of the 1990 agreement are set forth under the "General Provisions" heading. Paragraph 12 states:

12. TERM. These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of 25 years from date of approval by the lot owners. These covenants will be automatically extended for successive periods of ten years unless cancelled by an instrument duly recorded by a majority of the owners of the lots after the original 25 year period.

As in the original agreement, the 1990 agreement provided for amendment of the restrictions by a majority of the lot owners and paragraph 13 states:

13. AMENDMENTS A. Amendment procedures are to be initiated by and at the discretion of the Trustees. In a meeting called by the Trustees for the purpose of amending this restriction, the Trustees shall send notice setting forth the proposed amendments by first class U.S. Mail, postage prepaid to all lot owners at the address of record per the St. Louis County Tax Assessors Office, not less than thirty (30) days prior to the call of a general lot owners meeting. Notices shall also contain date, place and time of meeting. The owner or owners of the property shall be entitled to one vote for each lot owned by him, her, it or them. Voting is to be by secret ballot unless all persons in attendance are agreeable to waiving this provision. A majority of the lot owners present and voting in person or by an absentee ballot witnessed by another Subdivision property owner, may amend these restrictions.

B. If the Trustees do not initiate a proposed amendment to the Restrictive Agreement, these restric-

tions may also be altered or amended all or in part at any time by written agreement signed by not less than two-thirds (2/3) of the then record owners in fee simple title of all lots in River Bend Estates Plats 1, 2, 3, 4, 5 and 6. Any such written and signed alteration or amendment or change shall, when duly certified and acknowledged by the Trustees and recorded with the Office of the Recorder of Deeds of St. Louis County, Missouri become part of the provisions and restrictions of this Subdivision.

(emphasis added). Paragraph 14 addresses assessment and states in part as follows:

14. ASSESSMENT. In order to pay necessary expenses of the Trustees in performing their functions hereunder, (including, but not limited to, maintenance of street island planting, gateways, planters, lookout, hiking trail, and street lighting), said Trustees shall from year to year determine the total amount required for general and special purposes and apportion that sum among the respective owners of lots in the Subdivision.

The River Bend Estates Additions subdivision (Additions) is located next to the Estates. The River Bend Bath & Tennis Club (Club) was a Missouri non-profit corporation originally formed in the early 1960's.[1] According to defendants, the Club is located "between the Estates and the Additions." The Club provided its members with swimming, tennis and related recreational facilities and amenities. Residents of the Estates and Additions were eligible but not required to be mem-

bers of the Club. In December 2001, 90 % of the Club's Members were residents of the Estates, Additions and another subdivision.

According to a member of the Club's board of directors, in the late 1990's and early 2000's, the cost of maintenance and of "projected significant needed improvements exceeded the Club's resources." In early 2002, the Club contacted the trustees of the Estates and Additions regarding the Club's long-term needs. Thereafter, the Estates's trustees called for a meeting to vote on a proposed amended agreement (amended agreement). The amended agreement states that the "Subdivisions [Estates and Additions] were originally developed in such a manner that the swimming pool and tennis courts ... were neither owned nor operated by either of the Subdivisions as common improvements, under the Prior Restrictive Agreements, but were owned and operated by a private membership club, the River Bend Bath & Tennis Club (the "Club"), which was open on a fee basis to all residents of the Subdivisions, as well as others...." In the amended agreement, paragraphs 13 and 14 set forth provisions regarding the Club.[2] Paragraph 13 states:

13. COMMON IMPROVEMENTS. The Common Improvements shall be land and fixtures designated for the benefit of all residents of the Subdivision, including, but not limited to the River Bend Bath & Tennis Club ("Club"), although as provided in Section 14 hereof, only Club members and other authorized users as provided herein will be allowed to use the Club facilities and shall be charged membership

---

1. The corporation filed articles of dissolution and termination in November 2002.

2. Paragraphs 13 and 14 of the 1990 agreement are set forth in paragraphs 15 and 16 of the amended agreement.

and/or fees related to the use of the Club.

Paragraph 14 provides for a fifty-dollar assessment per year per lot to provide for the Club's maintenance and there is a provision for special assessments for Club maintenance. This paragraph also addresses Club membership and operation. Under this paragraph, all lot owners are required to pay the assessments regardless whether they are members of the Club. This agreement's "ASSESSMENT" paragraph added the following to the list of necessary expenses "other Common Improvements, including, but not limited to, the Club." A majority of the Estates's lot owners voted in favor of the amended agreement. Thereafter, the Club conveyed its real property and all other assets to the Estates's and Additions's homeowners' associations.

Plaintiffs own property in the Estates and brought an action against the trustees of the Estates. Plaintiffs sought injunctive relief and a determination that the amended agreement was null and void. Plaintiffs and defendants filed motions for summary judgment and statements of uncontroverted facts. The trial court found that the amended agreement was lawful and granted defendants' summary judgment motion. Plaintiffs appeal, raising one point.

▇ Plaintiffs set forth the standard of review for summary judgment. Defendants contend that the standard for court-tried cases applies because both parties stipulated that they presented all the evidence they would present at trial and requested that the trial court decide the case on the merits. *See Country Club District Homes Ass'n v. Country Club Christian Church,* 118 S.W.3d 185, 188 (Mo.App. W.D.2003). Defendants cite to the judgment in support of their contention that the parties stipulated they presented all

their evidence and requested that the case be submitted on the merits. The judgment states that the matter came before the court and "[a]fter considering the pleadings, motions, affidavits and arguments of both parties, and after a hearing regarding the same," the court found the amended agreement lawful. The judgment then provides that defendants' summary judgment motion was granted and plaintiffs' summary judgment motion was denied. The judgment does not state that the parties stipulated as to the evidence that would be presented at trial or that the court was deciding the case on the merits at the request of the parties. The standard for summary judgment shall be applied.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Appellate review of the trial court's grant of summary judgment is essentially de novo. *Id.* This court applies the same criteria as the trial court in determining whether summary judgment is proper. *Id.*

▇ Plaintiffs argue that the trial court erred in granting defendants' summary judgment motion because the "protective covenants regulate only the uses permitted and the sizes of lots and structures within the subdivision." Plaintiffs contend that as a matter of law the covenants cannot be amended or extended to impose a financial servitude and restrictions upon the alienation of property without the owners' consent.

▇ In interpreting affirmative covenants, principles of contract law apply. *Hills v. Greenfield Village Homes Ass'n, Inc.,* 956 S.W.2d 344, 349 (Mo.App. W.D.

1997); *Lake Wauwanoka, Inc. v. Spain,* 622 S.W.2d 309, 313 (Mo.App.1981). If the covenant is clear and unambiguous then the covenant is not subject to rules of contract "construction." *Id.*

 We note that plaintiffs and defendants discuss cases addressing restrictive covenants. As stated by plaintiffs, there is a distinction between restrictive and affirmative covenants. *Hills,* 956 S.W.2d at 348; *Lake Wauwanoka,* 622 S.W.2d at 312; Restatement (Third) of Property (Servitudes), section 1.3 (1998). "An affirmative covenant, as opposed to a restrictive one, does not restrict the use of land in question, but instead, imposes a duty on a party to the agreement to perform an affirmative act." *Hills,* 956 S.W.2d at 348. Here, certain provisions at issue impose duties rather than restricting the use of land. For example, the imposition of a fifty-dollar assessment for the Club's maintenance is a promise to perform an affirmative act. *Lake Wauwanoka, Inc.,* 622 S.W.2d at 312. Regardless, affirmative and negative covenants are both "promises, and, as such, create rights and duties relating to the land." *Id.*

Plaintiffs rely on the Missouri Supreme Court's decision in *Van Deusen v. Ruth,* 343 Mo. 1096, 125 S.W.2d 1 (1938), where the court considered the enforceability of an amendment to a subdivision's 1925 restrictive agreement. The 1925 agreement stated:

> "All or any of the foregoing provisions or restrictions may be modified, amended, released or extinguished at any time after ten (10) years by written instrument executed, acknowledged and recorded as required by law for instruments affecting real estate, by the owners of seventy-five per cent (75%) of the total number of front feet embraced in this indenture, and for this purpose the frontage shall be determined as set forth in Paragraph Second of this instrument, provided, however, that the Company, its successors or assigns promoting this subdivision, or its or their assigns who shall not be bona fide purchasers of lots therein, shall not be privileged to join in such written agreement."

*Van Deusen,* 125 S.W.2d at 2. The 1925 agreement permitted the construction of apartments and commercial buildings on lots "fronting" certain named streets. In 1936, owners of slightly more than seventy-five percent of the total number of front feet signed a modification agreement that prohibited construction of any apartment or commercial building on lots fronting the named streets. *Id.* The plaintiffs brought an action to "avoid the alleged modification agreement." *Id.* They argued in part that the alleged modification agreement attempted to place additional burdens on the subdivision and this was not authorized by the 1925 agreement. *Id.* The plaintiffs also argued that the words "modified" and "amended" as used in the above quoted language from the 1925 agreement could not be construed to mean and include additional burdens. *Id.* The trial court found for the plaintiffs and the Missouri Supreme Court affirmed. The court stated:

> Note the language of the provision authorizing a change in the restrictions: "All or any of the foregoing provisions or restrictions may be modified, amended released or extinguished at any time after ten (10) years * * *." A mere reading of the above suggests to the mind that the intention was to permit the existing restrictions to be alleviated, that is, made less harsh, or to be entirely extinguished. It would certainly require a strained construction to hold that the clause authorized any new and additional restrictions and burdens to be added. The words "modify" and "amended" may have various meanings, but they must be interpreted in the light of the context in which they are used.

When so interpreted in this case they cannot be given a meaning which would authorize new burdens to be added. *Id.* at 2–3. The court also stated that to uphold the modification agreement would require the court to construe the clause at issue "most liberally" to authorize new restrictions. *Id.* at 3. This construction would be contrary to the principle that restrictions that are in derogation of the fee conveyed will not be extended by implication to include anything not clearly expressed. *Id.*

Relying on *Van Deusen*, this court reached the same result in *Jones v. Ladriere*, 108 S.W.3d 736 (Mo.App. E.D.2003). In this case, the trial court interpreted the original agreement to permit a lot owner to build a residence on his lot. *Jones*, 108 S.W.3d at 740. A "large majority" of the residence owners signed a purported amendment to the original agreement that would have prohibited the lot owner from constructing the residence on his lot. *Id.* at 737, 740. The original agreement provided that it could be " 'altered, amended, changed or revoked by a written agreement signed by not less than two-thirds (2/3) of the then record owners of the fee simple titles of all lots on Berkeley Lane and such written and signed alteration, amendment, change or revocation shall when duly certified ... become a part of the provisions and restrictions of this Agreement.' " *Id.* at 739–40. As in *Van Deusen*, this court found nothing in this language that gave "Association members" the power to add new burdens or restrictions not found in the original agreement by a two-thirds vote. *Id.* at 740. This

court further held that the amendment represented a new burden or restriction on the lot owner. *Id.* Accordingly, the amendment was held invalid to the extent it prohibited the lot owner from constructing a residence on his lot. *Id.*

*Van Deusen* and *Jones* are analogous to the present case. The amended agreement has a new paragraph titled "COMMON IMPROVEMENTS" that states these improvements "shall be land and fixtures designated for the benefit of all residents of the Subdivision, including, but not limited to the River Bend Bath & Tennis Club ...." There are also new provisions for yearly and special assessments for the Club's maintenance. These provisions constitute new burdens for all Subdivision lot owners. The 1990 agreement provides that a majority of the lot owners "may amend these restrictions." This language is similar to that found in *Van Deusen* and *Jones*. As in those two cases, the amendment language here does not give a majority of the lot owners the power to add new burdens not found in the 1990 agreement. We interpret the phrase "may amend these restrictions" as permitting a majority of lot owners to change existing covenants but not to add new or different covenants, as is the case with the amended agreement.[3]

Defendants argue that the amendments at issue were contemplated by the original agreement and all amendments that followed. Defendants contend that paragraph 14 of the 1990 agreement contemplated not only levying and changing assessments but also that the Trustees had authority to make assessments related to

---

**3.** Support for our conclusion regarding the provision for amendment is also found in certain decisions from other states. *Meresse v. Stelma*, 100 Wash.App. 857, 999 P.2d 1267 (2000); *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994); *Caughlin Ranch Homeowners Ass'n v. Caughlin Club*, 109 Nev. 264, 849 P.2d 310 (1993); *Lakeland Property*

*Owners Ass'n v. Larson*, 121 Ill.App.3d 805, 77 Ill.Dec. 68, 459 N.E.2d 1164 (1984). In *Evergreen Highlands Ass'n v. West*, 73 P.3d 1 (Colo.2003), the court criticized the analysis set forth in those four cases. 73 P.3d at 4–7. But the analysis in the four cases cited is consistent with *Van Deusen* and this court's decision in *Jones*.

common property they held and maintained. Paragraph 14 gave the trustees authority to determine and apportion the amount required for "general and special purposes" for payment of necessary expenses "including, but not limited to, maintenance of street island planting, gateways, planters, lookout, hiking trail, and street lighting." However, this paragraph does not provide for ownership of the Club or other "land and fixtures designated for the benefit of all residents of the Subdivision" as set forth in the amended agreement.

Defendants also rely on this court's decision in *Sanderson v. Hidden Valley Fishing Club, Inc.,* 743 S.W.2d 486 (Mo.App. 1987). In this case, the covenants sought to be amended provided for amendment by "sixty-seven percent of the voting lots." *Sanderson,* 743 S.W.2d at 488. Thereafter, at least sixty-seven percent of the voting lot owners passed an amendment that increased the amount of the assessment for full-time residents. *Id.* This court held that if the covenant's mandated procedures were complied with "then approval by less than one hundred percent of those affected does not of itself invalidate an amendment." *Id.* Contrary to the present case, the amendment in *Sanderson* amended an existing burden. Here, the 1990 agreement had no provisions regarding the Club and added new burdens rather than changing existing ones. This court's holding in *Sanderson* is distinguishable.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

CLIFFORD H. AHRENS, P.J., and LAWRENCE E. MOONEY, J., Concur.