226 P.3d 411

DREAMLAND VILLA COMMUNITY CLUB, INC., an Arizona nonprofit corporation, Plaintiff/Counterdefendant/Appellant/Cross–Appellee,

v.

Daryle G. RAIMEY and Carolyn E. Raimey, husband and wife; Kathryn Pugnier and Vincent Pugnier, wife and husband; Joseph Kuka and Arylynne Kuka, husband and wife; Edward Bernal and Bertha J. Bernal, husband and wife; Philip Morgan and Glynda M. Morgan, husband and wife; Dorothy Norris and John Doe Norris, wife and husband; Deannalee C. Plant and John Doe Plant, wife and husband; Frank S. Ponio and Ellen J. Ponio, husband and wife; Harold G. Robinson and Anita R. Robinson, husband and wife; Jose Segura and Rosalina Segura, husband and wife; James Shields and Eileen Shields, husband and wife; Arthur H. Sprandel and Janice E. Sprandel, husband and wife; Robert D. Wimsett and Carolyn Wimsett, husband and wife; Frank B. Wolgan and Betty J. Wolgan, husband and wife; James H. Anhorn and Jane Doe Anhorn, husband and wife; Harold M. Britton and Janet E. Britton, husband and wife; Howard R. McKillip and Debra McKillip, husband and wife; Nelson J. Dean and R. Shirley Dean, husband and wife; Evangelina Demarbiex, Beneficiary of the Evangelina Demarbiex Trust; Harold L. Geivett and Ruby Geivett, husband and wife; Mabelle Lerstad and John Doe Lerstad, wife and husband; Roy Don Fields and Susan Fields, husband and wife, Defendants/Counterclaimants/Appellees/Cross–Appellants,

and

Edward L. Young and Joann Young, husband and wife; W.T. Tiller and Norma J. Tiller, husband and wife; Roger Breyfogle and Maria Breyfogle, husband and wife, Defendants/Counterclaimants/Appellees.

No. 1 CA–CV 08–0388.

Court of Appeals of Arizona, Division 1, Department A.

March 16, 2010.

Reconsideration Denied June 7, 2010.

Maxwell & Morgan, PC By Charles E. Maxwell, Brian W. Morgan, Mesa, Attorneys for Plaintiff/Counterdefendant/Appellant/Cross-Appellee.

Cheifetz Iannitelli Marcolini, PC By Steven W. Cheifetz, Stewart F. Gross, Matthew A. Klopp, Phoenix, Attorneys for Defendants/Counterclaimants/Appellees/Cross–Appellants.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 This appeal and cross-appeal concern the validity of amendments to deed restrictions creating a homeowners' association and requiring homeowners within the community to pay assessments as well as the trial court's decision not to award attorneys' fees to the prevailing party in the matter. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Dreamland Villa is a residential community comprised of eighteen sections. Each section contains a different number of residential lots. The first section was created in 1958, and the last section was constructed in 1972. Every residence within Dreamland Villa must be occupied by at least one person age fifty-five or older. Dreamland Villa does not have any common areas.

¶ 3 Dreamland Villa Community Club, Inc. (DVCC) was incorporated in 1961 as a nonprofit corporation by volunteer members to provide recreational facilities to those who joined the club. Those recreational facilities included clubhouses, a recreational center with swimming pools, shuffleboard courts, and a ballroom. DVCC also organized planned activities for its members.

¶ 4 Each Dreamland Villa section is governed by a separate set of deed restrictions called "Declaration of Restrictions" (Declarations), which were recorded in the 1960s and 1970s.[1] With the exception of section 18, all of the Declarations contain similar provisions concerning the appearance and maintenance of residences within the relevant section.[2] There are no provisions about DVCC. Regarding amendments, the Declarations provide that "said covenants and restrictions may at any time be changed in whole or in

---

1. The recording dates for the relevant Declarations are as follows: section 7, recorded in 1963; section 14, recorded in 1970; section 15, recorded in 1971; section 16, recorded in 1972; section 17, recorded in 1972; and section 18, recorded in 1978.

2. For instance, the Declarations provide that all lots may only be used for single-family dwellings, house trailers are not permitted on a property for more than thirty days, the ground floors of each house may not be less than 800 square feet, livestock may not be kept on property, and advertising signs are not allowed on property.

part or revoked in their entirety by a vote of the owners of a majority of the lots." [3]

¶ 5 The Declarations for section 18 contain similar restrictions but provide additional restrictions not included in the Declarations for the other sections. Specifically, the Declarations for section 18 provide, in relevant part:

> Each residential unit in DREAMLAND VILLA EIGHTEEN is hereby subjected to the initial and annual assessments herein described in favor of DREAMLAND VILLA COMMUNITY CLUB.... The assessments are for the purpose of aiding the CLUB to acquire, maintain, improve and operate recreational and other facilities, and to exercise, carry on and conduct any and all of its corporate activities.

The annual assessment, however, was only to be imposed on nonmembers of DVCC. Members were to pay a membership fee.

¶ 6 In 2003 and 2004, DVCC recorded a Second Amended Declaration of Restrictions (Second Amended Declarations) for each section within Dreamland Villa. Each Second Amended Declaration requires lot owners to pay annual assessments and special assessments levied by DVCC "to promote the recreation, health, safety and welfare of the residents ... and for the improvement, maintenance, and replacement of the Common Areas." Except as to section 18, no previous Declaration required the payment of assessments or even mentioned DVCC or common areas.

¶ 7 Beginning in December 2006, DVCC filed a number of lawsuits against various sets of homeowners [4] within Dreamland Villa for failing to pay annual assessments. Certain sets of homeowners filed identical answers and counterclaims, maintaining that the Second Amended Declarations were void and that they could not be forced to become members of a nonprofit corporation or pay assessments. These homeowners reside in sections 7, 14, 15, 16, 17, and 18 of Dreamland Villa. The homeowners successfully moved to consolidate the lawsuits filed by DVCC.

¶ 8 DVCC filed separate motions for summary judgment against each set of homeowners. The motions for summary judgment and supporting statements of facts set forth each homeowner's outstanding assessments, including late charges, finance charges, and attorneys' fees. The homeowners filed a consolidated response to DVCC's motions for summary judgment, arguing that they never consented to become members of DVCC and that there were factual issues regarding the validity of the Second Amended Declarations. The homeowners also requested relief pursuant to Arizona Rule of Civil Procedure 56(f).

¶ 9 In May 2007, certain homeowners filed a motion for summary judgment,[5] arguing that DVCC could not impose membership in DVCC without the homeowners' consent and that the original Declarations could not be amended to require membership in DVCC. The trial court later ordered DVCC to file a responsive brief to address certain issues raised in the homeowners' reply, including whether (1) the Second Amended Declarations were ever validly recorded, (2) the petitions used to obtain votes informed lot owners that they were voting to create a homeowners' association, (3) DVCC intentionally misled lot owners to obtain the requisite number of votes needed to amend the Declarations, and (4) DVCC obtained a majority of the signatures needed to amend the Declarations in some sections.

¶ 10 In September 2007, the trial court denied the homeowners' request for Rule 56(f) relief and ruled, in relevant part:

> At the heart of this dispute is the issue of whether the Second Amended Declaration

---

3. The Declaration for section 7 is slightly different and provides, in part: "The foregoing restrictions and covenants run with the land and shall be binding ... unless by a vote of a majority of the then owners of said lots in DREAMLAND VILLA SEVEN it is agreed to change the said covenants in whole or in part."

4. Not all homeowners who were parties to the proceedings below are participating in the cross-

appeal. For purposes of this opinion, however, the appellees (including all homeowners from the proceedings below) and cross-appellants (not including those lot owners not participating in the cross-appeal) will be referred to collectively as "the homeowners."

5. The homeowners within section 18 did not join in the motion for summary judgment.

of Restrictions, which, in effect, made membership in the Plaintiff non-profit corporation mandatory for all subject homeowners, is valid.

Dreamland Villa consists of eighteen sections of homeowners, each subject to differing Declarations of Restrictions. A review of these reveals that the Declaration of Restrictions applicable to the homeowners in sections 18 and 19 [6] allows mandatory membership in a nonprofit corporation such as Plaintiff. Thus, as to those homeowners, there is no real dispute—they can be required to be members of Plaintiff corporation and pay assessments or fees related thereto.

As to the parties to this case which are homeowners in five of the remaining sixteen sections, there was a vote of homeowners in 2003 to determine whether the Declaration of Restrictions should be amended to make membership in Plaintiff corporation mandatory.... As to all five relevant sections (7, 14, 15, 16 and 17) a majority of homeowners voted in favor of allowing the amendment.

Membership in a nonprofit corporation requires a person's express or implied consent. [Arizona Revised Statutes (A.R.S.)] § 10–3601(B) [2004]. Our appellate courts have held that when a homeowner takes a deed containing [a] deed restriction that allows for amendment by the vote of a majority of homeowners, that homeowner implicitly consents to the subsequent majority vote to make membership in a homeowner association mandatory. *Shamrock v. Wagon Wheel Park Homeowners Assn.*, 206 Ariz. 42, 75 P.3d 132 (App.2003).

Defendants' [sic] make several challenges to the validity of the 2003 vote on the Second Amended Declarations of Restrictions. None of the arguments are persuasive.

For these reasons, all [DVCC's] Motions for Summary Judgment are granted and Defendants' Motion for Summary Judgment is denied.

¶ 11 DVCC lodged proposed forms of judgment for all the cases [7] resolved by the ruling. DVCC also submitted applications for attorneys' fees, statements of costs, and *China Doll*[8] affidavits for each case. The homeowners filed a consolidated objection to DVCC's proposed forms of judgment, objecting to the inclusion of attorneys' fees that had not been decided as well as the inclusion of late charges and prejudgment interest. DVCC replied that the granting of the motions for summary judgment resolved all issues. The homeowners then filed an objection to the application for attorneys' fees, arguing that the trial court had discretion not to award fees. The homeowners further argued that the fees requested were excessive and unreasonable.

¶ 12 The trial court declined to award DVCC attorneys' fees "[i]n the exercise of its discretion, and for the reasons listed on page 2, line 11 through page 3, line 7 in Defendants' October 24, 2007 pleading." The reasons listed were (1) that the homeowners had good-faith defenses, (2) that the case presented novel and complex issues of fact and law, and (3) because a fee award would work an undue hardship on the homeowners. The trial court did award DVCC taxable costs.

¶ 13 DVCC filed a motion for a new trial pursuant to Arizona Rule of Civil Procedure 59(a)(1), (5) and (8), arguing that the trial court abused its discretion and ruled contrary to law in refusing to award DVCC attorneys' fees. The trial court denied the motion. The trial court ordered the homeowners to submit forms of judgment, which the homeowners did. DVCC objected to the proposed forms of judgment because they did not include interest, accruing assessments, or late charges. The homeowners responded that they never admitted to any of DVCC's damages, including late charges and interest. The trial court determined that it never addressed the amounts of assessments, late charges, or interest each homeowner

---

**6.** Section 19 is not involved in this appeal.

**7.** Twenty-four cases were resolved by the ruling, and two cases were still pending and not settled by the ruling.

**8.** *See Schweiger v. China Doll*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

owed, but "only that [the homeowners] do owe [DVCC] the same." An evidentiary hearing was held. DVCC argued that it could charge $15.00 per month in late charges plus interest pursuant to the terms of the Second Amended Declarations. The trial court held that, under A.R.S. § 33–1803(a) (2007), late fees would be limited to $15.00 per year and that prejudgment and post-judgment interest, at eighteen percent per annum, was appropriate on the unpaid assessments.

¶ 14 The trial court signed twenty-five separate judgments. DVCC timely appealed, and the homeowners filed a timely cross-appeal.

## DISCUSSION

¶ 15 DVCC raises several issues on appeal, which we have grouped into three categories: (1) issues regarding the denial of attorneys' fees, (2) issues regarding the principal amounts due as set forth in DVCC's motions for summary judgment, and (3) issues regarding late fees. The homeowners raise several issues on cross-appeal, which generally consist of: (1) issues regarding the validity of the Second Amended Declarations, (2) issues regarding the passing of the Second Amended Declarations, and (3) issues regarding the denial of Rule 56(f) relief. Because the homeowners challenge the underlying merits of the judgments, we will address the cross-appeal first.

¶ 16 A trial court properly grants summary judgment when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c). On appeal, we determine de novo whether a genuine issue of material fact exists and whether the trial court properly applied the law. *L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997). Additionally, we view the facts in the light most favorable to the party against whom summary judgment was entered. *Orme School v. Reeves*, 166 Ariz. 301, 309–10, 802 P.2d 1000, 1008–09 (1990). We will affirm a grant of summary judgment if the trial court was correct for any reason. *City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14,

32 P.3d 31, 36 (App.2001). However, summary judgment is not appropriate as a substitute for a jury trial, even if the trial court determines that the moving party will likely prevail at trial. *Orme School*, 166 Ariz. at 310, 802 P.2d at 1009.

¶ 17 Statutory interpretation is a question of law that we review de novo. *Fremont Indem. Co. v. Indus. Comm'n of Ariz.*, 182 Ariz. 405, 408, 897 P.2d 707, 710 (App.1995). We review the trial court's legal conclusions, such as the interpretation of a contract, de novo. *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 182, ¶ 27, 181 P.3d 219, 229, (App.2008); *Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434, ¶ 37, 167 P.3d 111, 121 (App.2007).

### A. Membership in DVCC

¶ 18 The homeowners first argue that DVCC needed to show that the homeowners either expressly or impliedly consented to join DVCC, which DVCC failed to do. This argument is based on A.R.S. § 10–3601(B) and *Shamrock*, 206 Ariz. 42, 75 P.3d 132. In this case, the trial court determined:

Membership in a nonprofit corporation requires a person's express or implied consent. [A.R.S.] § 10–3601(B). Our appellate courts have held that when a homeowner takes a deed containing [a] deed restriction that allows for amendment by the vote of a majority of homeowners, that homeowner implicitly consents to the subsequent majority vote to make membership in a homeowner association mandatory. *Shamrock v. Wagon Wheel Park Homeowners Ass'n*, 206 Ariz. 42, 75 P.3d 132 (App.2003).

The trial court found that a majority of lot owners voted in favor of amending the original Declarations to make membership in DVCC mandatory and that such a vote was provided for in the original Declarations, thus fulfilling the consent requirement.

¶ 19 Section 10–3601(B) addresses admission of members to a nonprofit corporation and provides that "[n]o person shall be admitted as a member without that person's consent. Consent may be express or implied." It is clear that each homeowner in

this case needed to consent to be a member of DVCC, a nonprofit corporation. Implied consent is inferred from a person's conduct rather than from one's direct expression.[9] Black's Law Dictionary 300 (7th ed.1999). "Deed restrictions constitute 'a contract between the subdivision's property owners as a whole and the individual lot owners.'" *Wilson v. Playa de Serrano*, 211 Ariz. 511, 513, ¶ 7, 123 P.3d 1148, 1150 (App.2005) (quoting *Horton v. Mitchell*, 200 Ariz. 523, 525, ¶ 8, 29 P.3d 870, 872 (App.2001); *Arizona Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993)). By accepting a deed subject to deed restrictions, a grantee assents to such restrictions and is bound by them. *Duffy v. Sunburst Farms E. Mutual Water & Agric. Co., Inc.*, 124 Ariz. 413, 416, 604 P.2d 1124, 1127 (1980) (noting that, by purchasing property within the subdivision, lot owners became bound by the restrictions in the subdivision's declaration); *Heritage Heights Home Owners Ass'n v. Esser*, 115 Ariz. 330, 333, 565 P.2d 207, 210 (App.1977) (explaining that assent to deed restrictions is equivalent to executing an instrument containing the restrictions).

 ¶ 20 Before proceeding to an application of the foregoing principles to the circumstances of this case, we will first focus on the original Declaration recorded for section 18. Only in section 18 did original purchasers[10] from the developer arguably consent, by virtue of acceptance of a realty deed subject to a recorded provision allowing assessment of non-members, to pay monies annually to DVCC. DVCC asserts in its answering brief that, as to section 18, the original recorded restrictions "always provided for mandatory membership and mandatory dues," and the trial court agreed, ruling that the section 18

Declaration "allows mandatory membership in" DVCC. As we discuss below, DVCC's assertion, and the trial court's ruling in this regard, are explicitly contradicted by the language of the pertinent Declaration.

¶ 21 At oral argument in this appeal, DVCC's counsel retreated from the foregoing assertion. Counsel explained that, under the original restrictions, use of the recreational facilities was allowed only by virtue of membership in the club. Asked whether, under the original restrictions, lot owners in section 18 had any rights in the facilities, counsel stated that the lot owners had no such rights. Asked whether, under the original restrictions, lot owners in section 18 had any rights in the club, counsel stated that was a "difficult question." He advised this court that the developer "inartfully drafted" the section 18 Declaration, trying to "understand" a regime of "mandatory membership and mandatory dues," but that it was "not so clear" whether such a regime was accomplished, necessitating the amendments at issue here.

¶ 22 In fact, the section 18 Declaration imposed an assessment only on non-members of DVCC; as the Declaration put the matter, the annual assessment was waived as to a particular property if all residents of the property were DVCC members in the corresponding year. The Declaration neither required nor guaranteed DVCC membership, as it acknowledged non-member status in imposing the assessment. The Declaration allowed for the possibility that DVCC's bylaws may preclude a lot owner from "voting membership." In short, the Declaration did not afford to lot owners who paid the annual assessment membership privileges in DVCC and consequent use of the recreational facilities.[11]

---

**9.** We do not address the issue of express consent because it is clear that the homeowners in this case did not expressly consent to being members of DVCC.

**10.** The parties advised at argument that the homeowners before us are subsequent purchasers.

**11.** Because the assessment obligation imposed on initial purchasers in section 18 did not give them membership rights in DVCC, that obligation, binding on the initial purchasers through acceptance of their deeds, was seemingly a per-

sonal covenant only. *See Regency Homes Ass'n v. Egermayer*, 243 Neb. 286, 498 N.W.2d 783, 791 (1993) (in determining whether covenant assessing membership fees is merely personal to original covenantors, court must consider "whether the covenant grants the right of common use of the recreational facility to all property owners"); *see also Ebbe v. Senior Estates Golf and Country Club*, 61 Or.App. 398, 657 P.2d 696, 701 (1983) (covenant to pay assessment to club was personal only where "there was no mandatory membership requirement ... and no right was acquired by [lot] ownership to enjoy the golf course").

¶ 23 Thus, homeowners in section 18 were in the same position with reference to DVCC, prior to the purported amendments in 2003 and 2004, as were all the other homeowners here. DVCC membership, including payment of membership dues, was voluntary, and the Declarations did not provide for "mandatory membership and mandatory dues" in section 18.

■ ¶ 24 We can therefore assess the viability of the Second Amended Declarations by the same standards as to all the homeowners, contrary to the trial court's determination that, "as to … [section 18] homeowners, there is no real dispute—they can be required to be members of Plaintiff corporation and pay assessments or fees related thereto."

¶ 25 The trial court relied on our opinion in *Shamrock* in its determination that "when a homeowner takes a deed containing [a] deed restriction that allows for amendment by the vote of a majority of homeowners, that homeowner implicitly consents to the subsequent majority vote to make membership in a homeowner association mandatory."

¶ 26 In *Shamrock*, a residential subdivision (the Park) was created in 1960, and a declaration of restrictions concerning the development and maintenance of the Park was recorded the same year. 206 Ariz. at 43, ¶ 2, 75 P.3d at 133. Wagon Wheel Park Homeowners Association was incorporated in 1971. *Id.* at ¶ 3. A revised declaration of restrictions was recorded in 1980, the preamble of which acknowledged the existence of a homeowners' association.[12] *Id.* at 44, ¶ 4, 75 P.3d at 134. The association recorded amended bylaws in 1999 providing that all lot owners within the Park were automatically members of the association, requiring payment of assessments by each member. *Id.* at ¶ 5. Lot owners within the Park filed a lawsuit, arguing that membership in the association was voluntary and that the association could not impose assessments against non-member lot owners. *Id.* at ¶ 6. While the lawsuit was pending, the association amended the 1980 declaration of restrictions to provide for au-

tomatic membership in the association for Park lot owners. *Id.* at ¶ 7. We addressed whether the lot owners were members of the association based on the 1999 amended bylaws. *Id.* at 45–46, ¶ 10, n. 5, ¶ 16, 75 P.3d at 135–36. "In order to impose automatic membership on owners of property located within a neighborhood or community development, this requirement must appear in a deed restriction embodied within a recorded instrument." *Id.* at 45, ¶ 14, 75 P.3d at 135 (citations omitted). We noted that neither the 1960 declaration nor the 1980 declaration required membership in a homeowners' association but that lot owners may modify deed restrictions in a manner governed by the declaration in effect. *Id.* at ¶¶ 14–15. We found that the lot owners did not amend the 1980 declaration to require membership until November 2001. *Id.* at 46, ¶ 16, 75 P.3d at 136. However, we did not address the effect of the November 2001 amendment and concluded that, before November 2001, the lot owners were not members of the association. *Id.* at n. 5, ¶¶ 16, 18. We held that "mandatory membership in a new homeowners' association can only be imposed on owners of lots within an existing subdivision by recording deed restrictions to that effect." *Id.* at 43, ¶ 1, 75 P.3d at 133.

¶ 27 *Shamrock* did not ultimately determine whether and in what circumstances membership in an association could be imposed after the declaration of restrictions was amended to provide for such membership. Here, we are dealing directly with the Second Amended Declarations, which require membership in DVCC. Thus, we are addressing an issue that was left open in *Shamrock*.

¶ 28 However, DVCC argues that in *Shamrock* we favorably cited *Evergreen Highlands Ass'n v. West*, 73 P.3d 1 (Colo. 2003). *Shamrock*, 206 Ariz. at 46, ¶ 15, 75 P.3d at 136. In *Evergreen*, membership in the association at issue and payment of assessments were initially voluntary until an amendment made both mandatory. 73 P.3d at 3. The association maintained a park area in the community that was open to use by

---

12. Neither the 1960 nor the 1980 restrictions provided for the formation of a homeowners' association. *Shamrock*, 206 Ariz. at 43–44, ¶¶ 2–

4, 75 P.3d at 133–34. However, six owners of Park lots incorporated a homeowners' association in 1971. *Id.* at 43, ¶ 3, 75 P.3d at 133.

residents. *Id.* at 2. The Colorado Supreme Court held that a modification clause within a declaration of restrictions that allows the restrictions to be "changed" and "modified" allows for the addition of a new covenant, including one requiring all lot owners to be members of a homeowners' association and pay mandatory assessments for the maintenance of common areas. *Id.* at 2–4. *Evergreen* declined to follow the "*Lakeland* line of cases," which disallowed amendments of restrictions that imposed substantial and unforeseeable impacts on lot owners. *Id.* at 6; *see Lakeland Prop. Owners Ass'n v. Larson,* 121 Ill.App.3d 805, 77 Ill.Dec. 68, 459 N.E.2d 1164 (1984); *Caughlin Ranch Homeowners Ass'n v. Caughlin Club,* 109 Nev. 264, 849 P.2d 310 (1993); *Boyles v. Hausmann,* 246 Neb. 181, 517 N.W.2d 610 (1994); and *Meresse v. Stelma,* 100 Wash.App. 857, 999 P.2d 1267 (2000). The *Lakeland* line of cases is cited by the homeowners to support their arguments in the present case.

¶ 29 In *Wilson,* the relevant declaration of restrictions provided that an association would own and control the common areas and that the development was an "adult townhouse development." 211 Ariz. at 512, ¶ 2, 123 P.3d at 1149. The homeowners' association amended its bylaws to provide that it would be an age-restricted community, restricting occupancy to persons at least fifty-five years old. *Id.* at ¶¶ 2–4. The main issue was whether the amended bylaws were sufficient to create an enforceable deed restriction imposing an age restriction. *Id.* at 513, ¶ 6, 123 P.3d at 1150. The court noted that, to impose a restriction on a lot owner regarding the use of his or her lot, the restriction must appear in the declaration.[13] *Id.* at ¶ 7 (citing *Shamrock,* 206 Ariz. at 42, ¶ 14, 75 P.3d at 135). The court determined that neither the association's board nor the owners in the community had the authority to restrict the occupancy in the subdivision to

those age fifty-five and older because the declaration did not grant the board the power to impose such a restriction and because the declaration was limited to constructing, managing, and maintaining common areas. *Id.* at 513–14, ¶¶ 8–9, 123 P.3d 1148, 123 P.3d at 1150–51. Like *Shamrock,* the *Wilson* association amended only the bylaws, not the declaration. *Id.* at 513–15, ¶¶ 9, 12, 15, 123 P.3d at 1150–52.

¶ 30 In this case, it is noteworthy that there were no common areas within Dreamland Villa. DVCC initially was a voluntary recreational club with voluntary membership, whose facilities were not open to non-members. This recreational club subsequently became a homeowners' association. The original Declarations, excluding the section 18 Declaration, did not mention DVCC, did not require membership in DVCC, and did not require payment of assessments for recreational facilities. However, each Declaration provided that it could be amended in whole or in part by a majority vote of lot owners. The question here is whether deed restrictions for a community without common areas, containing only restrictive covenants pertaining to each lot owner's personal residence, can be amended by majority vote of lot owners to require membership in an association and the imposition of assessments.[14] We hold here that the Second Amended Declarations cannot be enforced against the homeowners.

¶ 31 The homeowners contend that, pursuant to the express language of the Declarations, any amendment must be directed at, and is limited by, the scope of restrictions and cannot create new obligations not previously mentioned. The amendment provision states: "PROVIDED, HOWEVER, that said covenants and restrictions may at any time be *changed in whole* or in part *or revoked in their entirety* by a vote of the owners of a majority of the lots."[15] (Emphasis added).

---

**13.** *Wilson* states: "If the recorded declaration does not contain or at least provide for later adoption of a particular restriction or requirement, that restriction or requirement is invalid." 211 Ariz. at 513, ¶ 7, 123 P.3d at 1150 (citing *Shamrock,* 206 Ariz. at 42, ¶ 15, 75 P.3d at 135).

**14.** DVCC contends that Restatement (Third) of Property (Servitudes) § 6.3(1) (2000) allows for

creation of an association to manage *common property* and levy assessments in a common-interest community by majority vote of lot owners. However, because Dreamland Villa never had common areas, this argument is unavailing.

**15.** For section 7, the amendment provision provides: "unless by a vote of a majority of the then owners of said lots in DREAMLAND VILLA

Nonetheless, we do not base our holding on our evaluation of the breadth of the amendment language. The *Evergreen* court observed that making distinctions among the multitude of cases in this area "based on the breadth of the language used is an artificial, and ultimately unpersuasive, distinction," and we agree that such semantic considerations are not conclusive here. 73 P.3d at 6.[16]

¶ 32 The homeowners argue that DVCC could not create new affirmative obligations where the previous provisions did not alert the homeowners to the possibility that they would be subject to assessments. The homeowners rely on the *Lakeland* line of cases and *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 360 N.C. 547, 633 S.E.2d 78 (N.C.2006).[17] We agree that these cases tend to support the homeowners, in that each refuses enforcement of a new covenant that markedly changed the obligations of the implicated lot owners. But to see how these cases reflect on the case before us, we will, perhaps paradoxically, look to *Evergreen* and the view therein expressed of the *Lakeland* line of cases.

¶ 33 It is erroneous to assert, as does DVCC, that we adopted *Evergreen* and rejected the *Lakeland* approach in *Shamrock*. In *Shamrock* we cited *Evergreen* for the proposition that amendments to the declaration could only be effectuated as the declaration prescribed and not through the articles and bylaws of the association sought to be created. 206 Ariz. at 46, ¶ 15, 75 P.3d at 136. We did not evaluate the pertinent holding in *Lakeland*, or, for that matter *Evergreen*, by

implication or otherwise. Thus, we have not rejected *Lakeland* or cases like it. In fact, *Evergreen* itself distinguished the *Lakeland* approach on the basis of "the differing factual scenarios and severity of consequences that the cases present." 73 P.3d at 6. In *Evergreen*, the lot owners in the pertinent development had enjoyed the use of an extensive park containing hiking and equestrian trails, a barn and stables, a ball field, a fishing pond, and tennis courts, from the time of the initial development. *Id.* at 2. Latterly, through an amended declaration, a fee supporting the common elements was imposed. *Id.* at 3. The court found the authority to impose the assessment was implicit in the original declaration,[18] and well within the amendment provision of that declaration. *Id.* at 9. By contrast, the court determined that "[i]n those cases where courts disallowed the amendment of covenants, the impact upon the objecting lot owner was generally far more substantial and unforeseeable than the amendment at issue [in the case before it]." *Id.* at 6.

¶ 34 In both *Armstrong* and *Lakeland*, it was not arguable, as it was in *Evergreen*, that the imposition of a fee on lot owners properly supported common areas that all had enjoyed from the inception. In *Armstrong*, the court noted that, when the lot owners originally bought, they came into "a small residential neighborhood with public roads, no common areas, and no amenities," only to be subsequently burdened with "broad assessments" for "safety, welfare, re-

---

SEVEN it is agreed to change the said covenants in whole or in part."

**16.** This case is distinguishable from *Catalina Foothills Estates, Inc. v. Shull*, 126 Ariz. 484, 616 P.2d 944 (App.1980). The restrictions at issue in *Catalina Foothills* provided that the "aforesaid conditions and restrictions remain in full force and effect," and the "reversionary owner" shall have the right to make "any changes it desires in these conditions." *Id.* at 484–85, 616 P.2d at 944–45. The court found that the termination clause was not an "aforesaid condition" and could not be modified. *Id.* at 486, 616 P.2d at 946. Here, DVCC was not modifying a provision that appears after the modification clause. Instead, DVCC modified and expanded the initial restrictions and conditions. *Catalina Foothills Estates* is inapposite.

**17.** The homeowners also cite *Webb v. Mullikin*, 142 S.W.3d 822 (Mo.Ct.App.2004), which arguably is the most factually similar to the present case. *Webb* did not allow an amendment imposing assessments for a voluntary recreational club. *Id.* at 824–25, 827. *Webb* found support in the *Lakeland* line of cases.

**18.** The basis for this implied authority was found in the "implied duty" of each lot owner "to pay his proportionate share of the cost of maintaining and operating the common area." *Evergreen*, 73 P.3d at 9. By contrast, there are no common areas in Dreamland Villa, nor has each homeowner been entitled to use the recreational facilities as an appurtenance of lot ownership.

creation, health, common benefit, and enjoyment of the residents of the Lots...." 633 S.E.2d at 88–89. The *Armstrong* court determined the amendment to be "invalid and unenforceable," declaring that "[t]his court will not permit the Association to use the [d]eclaration's amendment provision as a vehicle for imposing a new and different set of covenants, thereby substituting a new obligation for the original bargain of the covenanting parties." *Id.* at 89.

¶ 35 In *Lakeland,* an amendment sought to convert what had been a voluntary association into one in which every lot owner was to be a member and for which mandatory assessments were to be imposed. 77 Ill.Dec. 68, 459 N.E.2d at 1167. The argument that the assessments were justified because of the lot owners' duty to pay for the right of access they had enjoyed as to common areas could not be made because it was waived and the record did not support it. *Id.* 77 Ill.Dec. 68, 459 N.E.2d at 1169–70. The court held that, in determining the authority granted by a provision for changing the original declaration, it would "not enforce changes [of restrictions] where a grantee takes title without proper notice that a majority of the lot owners may impose an assessment upon his property at some future time. Such a grantee can only be bound by what he had notice of...." *Id.* 77 Ill.Dec. 68, 459 N.E.2d at 1170 (citation omitted).

¶ 36 Our resolution of this case follows from the foregoing considerations. For decades after the first development of Dreamland Villa, DVCC was a voluntary club with voluntary membership. Homeowners had no right appurtenant to their lot ownership to membership in the club and no such right in the recreational facilities. There were no common areas. There were no assessments paid to the club, only voluntary dues paid by those who chose to use the facilities. Many homeowners chose not to become members or to use the facilities. The authority to amend the original Declarations did not allow 51% of the lot owners to force the other 49% into club membership the latter had chosen against, nor to assess and lien the properties of such homeowners for an association they did not seek. It is not reasonable to use the amendment provision to direct that one group of lot owners may, in effect, take the property of another group in order to fund activities that do not universally benefit each homeowner's property or areas owned in common by all.

¶ 37 Because we have determined the Second Amended Declarations to be invalid and unenforceable, we need not address the other issues raised in the cross-appeal. Further, since the judgment for DVCC will be vacated, we will not address its claims on appeal regarding the trial court's ruling on its requests for attorneys' fees and late charges.

¶ 38 As in *Armstrong,* to allow the generic amendment provision present here to burden the homeowners' individual lots would unreasonably alter the nature of the covenants, to which implicit agreement was historically given. As in *Lakeland,* we must disallow the new burdens, as the circumstances of this development indicate a lack of proper notice that such servitudes could be imposed nonconsensually under the generic amendment power.

**B. Attorneys' fees on appeal**

¶ 39 DVCC and the homeowners request attorneys' fees on appeal and cross-appeal pursuant to the Second Amended Declarations and/or A.R.S. § 12–341.01 (2003). We award the homeowners reasonable attorneys' fees upon compliance with ARCAP 21.

**CONCLUSION**

¶ 40 For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

CONCURRING: DANIEL A. BARKER, Judge and ANN A. SCOTT TIMMER, Chief Judge.