NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NICDON 10663 LLC, *Plaintiff/Appellant*,

*v.*

DESERT MOUNTAIN MASTER ASSOCIATION, *Defendant/Appellee*.

No. 1 CA-CV 20-0129
FILED 4-29-2021

Appeal from the Superior Court in Maricopa County
No. CV 2018-015165
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Dessaules Law Group, Phoenix
By Jonathan A. Dessaules, Jacob A. Kubert
*Counsel for Plaintiff/Appellant*

Carpenter, Hazelwood, Delgado & Bolen LLP, Tempe
By Curtis S. Ekmark, Gregory A. Stein
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1   Nicdon 10633, LLC, ("Nicdon") appeals several rulings of the superior court made in favor of Desert Mountain Master Association ("Desert Mountain") relating to the validity of changes to restrictive covenants governing short-term rentals. For the following reasons, we affirm.

## BACKGROUND

¶2   Desert Mountain is a planned community located in the City of Scottsdale, with 2,397 residential lots. In November 2015, Nicdon's principals purchased a house in Desert Mountain, intending to use it as a rental property until their retirement. In 2017, the principals transferred the property to their limited liability company, Nicdon.

¶3   The community is also home to Desert Mountain Golf Club ("Club"). The Club itself is a "dues-paying member" of Desert Mountain. Though many of the Club's members reside in Desert Mountain, members of the community ("Members") are not required to join the Club, and the Club accepts Members from outside the community. The Club owns one lot in Desert Mountain, but "it does not have a home to rent."

¶4   Desert Mountain is currently governed by the restrictive covenants set forth in its Second Amended and Restated Master Declaration of Covenants, Conditions, Restrictions, Assessments, Charges, Servitudes, Liens, Reservations and Easements for Desert Mountain ("Declaration"). When Nicdon acquired its property in Desert Mountain, the Declaration did not contain any rental time restrictions, though short-term rentals were prohibited by a Scottsdale ordinance at that time.

¶5   In 2017, Desert Mountain's Board of Directors ("Board") began considering proposals to limit short-term rentals based in part on concerns about potential nuisances associated with short-term rental activities. The Board initially sought to ban rentals of 60 days or less, but later proposed the amendment to the Declaration ("Amendment") at issue

here, which prohibited rentals of 30 days or less to "Ineligible Renters," defined as a party who is not a member of Desert Mountain or the Club. The Amendment states in part as follows:

> No Lot, including any and all buildings located thereon, shall be leased to an Ineligible Renter(s) for a term of less than thirty (30) days, and no Owner may advertise his or her Lot, including any and all buildings located thereon, as available to an Ineligible Renter(s) for a lease term of less than thirty (30) days in duration.  A Lot, including any and all buildings located thereon, may, however, be leased to an Eligible Renter(s) for a term that is less than thirty (30) days in duration. Home exchanges (also referred to as home swapping), through which parties offer each other lodging in each other's homes for a period of time without a monetary exchange, are permitted for a term of not less than seven (7) days.

¶6         The Board began taking steps to adopt the Amendment in February 2018, and later conducted a community vote, in which 1,761 of 2,397 total Members submitted ballots.  Of the 1,761 ballots, 1,323 votes were in favor of the proposal (75.13%), 430 opposed it, and eight abstained. The 1,323 votes in favor constituted 55% of the entire community.  The Amendment was recorded in July 2018, and became effective the following year.

¶7         In December 2018, Nicdon filed a complaint in the superior court, alleging the Amendment was invalid under both Arizona law and Desert Mountain's own governing documents.  Nicdon alleged Desert Mountain was "not permitted to add new and material use restrictions that are substantial and not foreseeable" from the face of the Declaration, and the Amendment impinged on Nicdon's right to use and enjoy its property.

¶8         Desert Mountain moved for summary judgment, asserting the Declaration specifically provided a mechanism to amend, repeal, or add to the property use restrictions within the community, and the Amendment was valid because it received the required percentage of the vote.  Nicdon responded, and later filed its own motion for summary judgment. It argued the Declaration did not put purchasers on notice that Desert Mountain could create "an entirely new covenant imposing a 30-day minimum duration on leases," and thus Arizona law required unanimous consent of all Members to adopt the Amendment.   Nicdon also asserted the

Amendment unreasonably favors the Club's members and the amendment process violated open meeting laws.

**¶9**　　In its detailed ruling, the superior court granted Desert Mountain's motion and denied Nicdon's motion. The court determined in part that Desert Mountain (1) followed the Declaration's requirements to amend the use restrictions; (2) applied the correct voting threshold for approval; and (3) did not violate Arizona law. The court then issued a ruling clarifying that the Amendment did not grant any new right for "prospective [C]lub members who are not otherwise Eligible Renters." After entry of a final judgment, Nicdon unsuccessfully moved for a new trial, and this timely appeal followed.

## DISCUSSION

### A.　　Cross-Motions for Summary Judgment

**¶10**　　Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the opposing party. *Dreamland Villa Cmty. Club, Inc., v. Raimey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010). We will affirm a grant of summary judgment if the superior court was correct for any reason. *Id.* In addition, we review the interpretation of a deed restriction de novo. *Wilson v. Playa de Serrano*, 211 Ariz. 511, 513, ¶ 6 (App. 2005).

#### 1.　　Compliance with Governing Documents

**¶11**　　By accepting a deed in the Desert Mountain planned community, Nicdon became bound by the Declaration, including properly adopted amendments. *See Duffy v. Sunburst Farms E. Mut. Water & Agric. Co., Inc.*, 124 Ariz. 413, 416 (1979). Nicdon contends, however, that Desert Mountain failed to comply with its own governing documents when it amended the Declaration.

**¶12**　　The Declaration establishes a specific process to amend the community's restrictions. Section 4.2 states: "The Board shall have the right . . . to amend, repeal, or add to the [use] restrictions . . . subject to the approval of the Members as set forth in Section 5.20 . . . ." Section 5.20, titled Major Decisions, sets forth the amendment process. First, the Board must approve a proposed amendment by written resolution. Second, it must give "notice to all Owners" of their right to object. If "no more than ten

4

percent (10%) of the Members" object within 45 days, the Board is authorized to implement its decision without a meeting or vote of the members. But if "more than ten percent (10%) of the Members" object, "the Major Decision may only be authorized if approved by eligible Members holding two-thirds (2/3) of the eligible votes in the Master Association who are present in person or by absentee ballot at a meeting of the Master Association called for this purpose."

¶13　　　The parties dispute the meaning of the two-thirds vote requirement in Section 5.20. Nicdon contends it requires two-thirds of all Members to approve a decision, while Desert Mountain argues it only requires two-thirds of the members "present in person or by absentee ballot" at the meeting.

¶14　　　Deeds containing restrictive covenants are contracts. *Powell v. Washburn*, 211 Ariz. 553, 555, ¶ 8 (2006). We interpret restrictive covenants to give effect to the intention of the parties, as determined by the language of the instrument, the circumstances surrounding its adoption, and the purpose for which it was created. *Id.* at 557, ¶ 13. In addition, in interpreting contracts, "we attempt to reconcile and give effect to all terms . . . to avoid any term being rendered superfluous." *Terrell v. Torres*, 248 Ariz. 47, 50, ¶ 14 (2020) (citation omitted)).

¶15　　　Consistent with the superior court's analysis, we conclude that when use restrictions are changed under Section 4.2, the language of Section 5.20 only requires the approval of two-thirds of those voting. Nicdon's reading would render the "in person or by absentee ballot" language superfluous. Nicdon argues that language merely specifies the required method of voting; however, both the community's bylaws and A.R.S. § 33-1812(A) already require votes to be cast in person or by absentee ballot.

¶16　　　In addition, Section 5.20's "two-thirds of those voting" clause can be distinguished from other provisions in the Declaration that clearly require vote counting based on *all* the Members without any qualifying language. *See Regency Homes Ass'n v. Schrier*, 759 N.W.2d 484, 489 (Neb. 2009) (concluding that amendment provision requiring "three-quarters vote of the entire number of memberships of [members] present in person or by proxy at any annual or special meeting or responsive to a vote thereon by mail" meant three-quarters of those voting, "regardless of how many total homeowners choose to participate in the vote"). Significantly, one such example can be found earlier in Section 5.20 itself: "ten percent (10%) of the Members" must object to a proposed resolution to trigger a vote of

the membership. Other instances include Section 5.16 ("an affirmative vote of two-thirds of all of the Members") and Section 7.3.4 ("a majority of all of the Members"). Because similar language was not included in the "two-thirds of those voting" clause, it cannot reasonably be interpreted to mean two-thirds of the entire membership.

¶17          Nicdon also contends that Section 1.33 of the Declaration controls. That provision defines the term "Majority of Members" and notes that "any specified fraction . . . of the Members means that fraction . . . of the total votes entitled to be cast by Members . . . ." But Section 1.33 merely defines the term "Majority of Members," which is not used in Section 5.20 and thus not relevant here. Instead of requiring a majority vote, Section 5.20 sets forth a hybrid amendment process including both the Board and Members. Though Nicdon would construe Section 5.20's label, "Major Decisions," as signifying it only applies to the most consequential decisions, it is simply a specific process for certain enumerated decisions, including amending lot use restrictions.

¶18          In adopting the Amendment, Desert Mountain properly followed the procedures laid out in its governing documents. The Board approved a written resolution at a February 2018 board meeting. Though the parties dispute whether board approval occurred at a meeting on February 5 or February 26, the precise date of approval is immaterial. In early March, the Board mailed notice of the resolution to the Members, and over ten percent objected within the forty-five-day period. Finally, the Board called a meeting to hold a vote, and over two-thirds of those voting approved the amendment. *See supra* ¶ 6.

### 2.          Compliance with Arizona Law

¶19          Nicdon also contends, even if the Amendment was adopted in compliance with the governing documents, it violates Arizona law. We are not persuaded.

¶20          First, adoption of the Amendment complied with the statutory scheme set forth in the Arizona Planned Communities Act. A.R.S. §§ 33-1801 to –1818. Those provisions allow members of a planned community to rent their property "unless prohibited in the declaration" and subject to "the declaration's rental time period restrictions." § 33-1806.01; *see* § 33-1802(3) (defining "declaration" to include any amendments). In general, the statutory framework defers to the requirements of a community's governing documents: A declaration may be amended by the "number of . . . eligible voters specified in the

declaration." § 33-1817(A)(1). However, much more is required for non-uniform amendments that "apply to fewer than all of the lots." § 33-1817(A)(2). In that case, an amendment must also have the consent of all affected owners. *Id*.

**¶21** Nicdon contends the rental time restriction does not apply uniformly to all Members, so the Amendment required the consent of all affected owners under § 33-1817(A)(2). The plain language of the rental restriction, however, bans any property owner—Nicdon, the Club, or any other—from renting their homes for 30 days or less, unless the rental is to an "Eligible Renter." Eligible Renters include only (1) members of the Desert Mountain Association or (2) members of the Club. Therefore, all property owners have the same pool of renters. The Club does not own a home to rent, does not participate in rental transactions, and does not receive remunerations.

**¶22** In the months before the vote, the Board made statements in correspondence with Members that "prospective" Club members would be considered Eligible Renters. However, this exception was never included in the Amendment, and it was never clear how the Board would regulate such rentals. The proper articulation of the Amendment tracks its plain language and conforms to the superior court's explicit finding on that point. Even if the Club received some incidental benefits from the rental restriction, Arizona law requires uniform application, not uniform effect. *See La Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Ariz.*, 142 Ariz. 235, 237–39 (App. 1984) (invalidating restriction for non-uniform application where amendment specifically excluded some property). Because the Amendment applies uniformly, the general rule only requiring compliance with the governing documents applies.

**¶23** Second, Nicdon relies on *Dreamland* to argue that, even when an association complies with the amendment provisions outlined in its restrictive covenants, an amendment may not be imposed if it "unreasonably alter[s] the nature of the covenants." 224 Ariz. at 51, ¶ 38. In *Dreamland*, homeowners purchased their lots with restrictive covenants relating only to their personal residences. *Id*. at 43, ¶ 4. Later, a nonprofit corporation that provided recreation to the community attempted to amend the covenants to compel all lot owners to become dues-paying members of their association. *Id*. at 44, ¶¶ 6–7. Though the changes were approved by the majority vote required by their declaration's amendment provision, we held that amendment invalid. *Id*. at 45, ¶ 10 and 51, ¶ 37. We explained that the declaration's generic amendment provision, requiring only a

simple majority of the owners, was insufficient to create requirements that "markedly changed the obligations" of the homeowners. *Id.* at 50, ¶ 32. We also noted that the homeowners were not on notice that they would later be forced to pay dues. *Id.* at 51, ¶ 38; *see also Wilson*, 211 Ariz. at 513, ¶ 7 ("If the recorded declaration does not contain or at least provide for later adoption of a particular restriction . . . that restriction . . . is invalid.").

¶24        Desert Mountain contends *Dreamland* does not govern here because it does not apply to planned communities. We decline to decide this question because the Amendment at issue here withstands scrutiny under *Dreamland*. Unlike the circumstances in *Dreamland*, the Declaration in this case includes much more than a generic amendment provision. It specifically provides a process by which the Board can "amend, repeal, or add to" *property use restrictions* in Section 4.2 and Section 5.20. In addition, the existing limits on renting property in the Declaration put Nicdon on notice that rentals were subject to limitation. For example, Use Restriction 1.2.2 stated that homeowners had to rent out the "entire Dwelling"; rentals could only be to a "Single Family"; and the lease had to include a provision that violating the Declaration is "default under the lease and is grounds for eviction." Further, Section 1.8 and Use Restriction 1.2.3 prohibited the use of property by three or more unrelated persons in any 365-day period. Given these provisions, as well as the comprehensive nature of the Declaration and its amendment procedures, a prospective purchaser of a lot in the community would reasonably be on notice their property would be regulated by extensive use restrictions, including limitations on renting of homes, subject to amendment in accordance with the Section 5.20 process.

¶25        Nicdon argues it lacked notice Desert Mountain might add rental time restrictions. Although no such restrictions explicitly appeared in the Declaration when Nicdon's principals purchased their home, they could have reasonably anticipated further restriction or expansion on matters within the scope of the Declaration's regulation. *See, e.g.*, *Sunburst Farms E., Inc. v. Braden*, No. 1 CA-CV 19-0144, 2020 WL 1952458, at *5, ¶ 28 (Ariz. Ct. App. Apr. 23, 2020) (finding amendment, based on majority-vote clause in declaration, that required mandatory payment obligations was not "unforeseeable or unfair" when community historically had common areas and assessments). In addition, at the time Nicdon's principals purchased their home, a Scottsdale ordinance banned all rentals under 30 days. Because Section 20.8 and Use Restriction 1.1.2 state that any violation of law is also a violation of the Declaration itself, Desert Mountain also necessarily prohibited rentals of 30 days or less at that time.

¶26　　　　Third, Nicdon recites from the Restatement that unanimous consent may be required to amend a declaration in some cases. Restatement (Third) of Property (Servitudes) ("Restatement") § 6.10(3) (2007).  Arizona generally follows the Restatement of the Law "if there is no statute or case law on a particular subject."  *Cramer v. Starr*, 240 Ariz. 4, 10, ¶ 21 (2016) (citation omitted).  Here, the governing statutes and caselaw are decisive, so we need not address this particular Restatement provision.  *See also Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 320, ¶ 28 (App. 2011) (citing *Shamrock v. Wagon Wheel Park Homeowners Ass'n*, 206 Ariz. 42, 46, ¶¶ 15–16 (App. 2003)) ("when [a] homeowner takes [a] deed containing restriction allowing amendment by majority vote, homeowner implicitly consents to any subsequent majority vote to modify or extinguish deed restrictions").  In any event, the cited Restatement rule only applies "[e]xcept as otherwise expressly authorized by the declaration," excluding its application in this case.  Restatement § 6.10(3).

### 3.　　　Validity Under the Restatement

¶27　　　　Citing Restatement §§ 3.1, 3.5, Nicdon argues the Amendment is "arbitrary and unreasonable" because it was passed to benefit the Club, rather than to protect the integrity of the community as Desert Mountain claims.  A restrictive covenant is generally valid unless it is illegal or unconstitutional or violates public policy.  Restatement § 3.1; *see Powell*, 211 Ariz. at 557, ¶ 14 (adopting Restatement).  As explained in the comments to § 3.1 the Restatement, this concept "applies the modern principle of freedom to contract," which generally means that courts will enforce parties' agreements "without passing on their substance."  As such, the party claiming invalidity of a restrictive covenant carries the burden of proof.

¶28　　　　A restriction may violate public policy for several reasons, including if the restriction is "arbitrary, spiteful, or capricious." Restatement (Third) of Property (Servitudes) § 3.1(1) (2000).  Those terms mean the following:

> Arbitrary normally means that the purpose is not legitimate, or that the means adopted have no reasonable relationship to accomplishment of the purpose. Spiteful means that the primary purpose of the servitude was to cause harm to another, rather than to secure a benefit to the creating party or parties. Capricious generally means that no legitimate purpose for creating the servitude is discernible.

9

*Id.* § 3.1 cmt. g.

**¶29** Here, the Board explained in part that the Amendment was "appropriate and necessary" to help maintain the "exclusivity and uniqueness of our beautiful community, while still enabling owners to lease their homes." The Board's purpose withstands scrutiny as a rational justification for proposing the rental restriction. *Supra* ¶ 5; *see* § 3.5 cmt. ("The fact that the servitude limits the market for property by limiting its use or reducing its value or requires the seller to share sale proceeds with another is irrelevant in determining its validity, so long as . . . a rational justification [exists] for imposing the obligation as a servitude that runs with the land."). Nicdon has not shown that the Board lacked a legitimate purpose for adopting the Amendment. In addition, as discussed, *supra* ¶ 21, the Amendment applies uniformly and does not unfairly benefit the Club. Therefore, the rental restriction is neither arbitrary nor unreasonable.

### B. Motion for Leave to Amend

**¶30** Nicdon argues the superior court erred by failing to consider the merits of its claims that Desert Mountain violated open meeting laws that govern planned communities. As an initial matter, we reject Nicdon's contention that it adequately pled violations of the Arizona open meeting law in its complaint. Under the Arizona Rules of Civil Procedure, allegations in the complaint must contain a "plain and short statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Arizona follows a notice pleading standard, meaning the purpose of the complaint is to "give the opponent fair notice of the nature and basis of the claim . . . ." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008) (citation omitted). A complaint provision "that states only legal conclusions, without any supporting factual allegations" fails to meet that standard. *Id.* at ¶ 7.

**¶31** Nicdon identifies two provisions of the complaint where it claims it sufficiently pled the open meeting violations. First, ¶ 12 states the rental restriction did not comply with Arizona law. However, a mere legal conclusion, without more, is inadequate. *See Cullen*, 218 Ariz. at 419, ¶ 7. Second, ¶ 30 alleges defects in the voting process in passing the Amendment. There is no mention of facts or law related to the board meetings, and Desert Mountain was not on notice that Nicdon would later raise these issues. Absent an amendment to the complaint, Nicdon was not entitled to later assert that Desert Mountain violated open meeting laws.

¶32          Nor do we find persuasive Nicdon's assertion that the superior court abused its discretion in denying leave to amend its complaint to add violations of the Arizona open meeting law.  We review the denial of a request to amend for an abuse of discretion.  *Carranza v. Madrigal*, 237 Ariz. 512, 515 ¶ 13 (2015).  Generally, leave to amend should be "liberally allowed in the interest of justice."  *Romo v. Reyes*, 26 Ariz. App. 374, 375 (1976); *see* Ariz. R. Civ. P. 15(b).  However, a court does not abuse its discretion in denying leave to amend when there has been undue delay in seeking the amendment.  *Carranza*, 237 Ariz. at 515, ¶ 13; *see Gulf Homes, Inc. v. Goubeaux*, 136 Ariz. 33, 38 (1983) (finding no abuse of discretion when party waited eight months to seek to amend complaint to introduce a new theory).

¶33          Nicdon first raised the open meeting law allegations on February 22, 2019, in its response to Desert Mountain's motion for summary judgment.  In its March 25 reply, Desert Mountain pointed out Nicdon's failure to plead these claims in its complaint.  In subsequent motions, Desert Mountain identified the pleading defect once more, but Nicdon neither sought leave to amend nor acknowledged the claim of defect.  The superior court issued its ruling on July 29, finding Nicdon had not sufficiently pled the open meeting law violations.  Nicdon did not seek leave to amend until September 19, over five months after it received notice that its complaint might be procedurally defective.  Because the superior court did not abuse its discretion in denying Nicdon's motion for leave to amend, we do not address the merits of its arguments concerning open meeting law violations.

### C.     Motion for New Trial

¶34          Nicdon argues the superior court erred in denying its motion for a new trial.  It contends the court's findings were contrary to the law because (1) the rental restriction is arbitrary, (2) the rental restriction violated *Dreamland*, and (3) the court erred in its rulings regarding the open meeting law violations.  We review the denial of a motion for new trial for an abuse of discretion.  *Mullin v. Brown*, 210 Ariz. 545, 547, ¶ 2 (App. 2005).  A court may grant a new trial when the judgment is contrary to the law in a way that materially affects the party's rights.  Ariz. R. Civ. P. 59(a)(1)(H).  For the reasons discussed above, the superior court did not abuse its discretion in denying Nicdon's motion for a new trial.

### D. Attorneys' Fees and Costs

¶35 Nicdon requests an award of attorneys' fees and costs incurred on appeal. Because Nicdon has not prevailed, we deny its request. Desert Mountain also requests attorneys' fees under Section 5.13 of the Declaration, which provides that the prevailing party in litigation shall be entitled to recover attorneys' fees from the other party. Generally, we enforce a contractual attorneys' fees provision according to its terms. *Swain v. Bixby Vill. Golf Course Inc.*, 247 Ariz. 405, 414, ¶ 40 (App. 2019). We therefore award Desert Mountain attorneys' fees incurred on appeal. As the successful party on appeal, Desert Mountain is also awarded taxable costs. Both awards are subject to Desert Mountain's compliance with ARCAP 21.

## CONCLUSION

¶36 We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:     AA